UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEINHORST ASSOCIATES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALPHONSO JACKSON, in his capacity as )<br>Secretary of the United States Department of )<br>Housing And Urban Development, )<br>)<br>)<br>)<br>Defendant. )<br>) | Civil Action No. 07-813 (HHK) |

**PLAINTIFF'S SUPPLEMENTAL REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

At the June 12, 2007 hearing on Plaintiff's "Motion for Preliminary Injunction," the Court indicated it would be appropriate for the Plaintiff to clarify how the regulation challenged by Plaintiff, 24 C.F.R. § 401.100 (b), is inconsistent with the express provisions of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA). As part of this clarification, the Court further indicated that it would be appropriate for Plaintiff to provide evidence to support Plaintiff's assertion made at the June 12 hearing that Congress had considered and rejected the ability of HUD to redetermine the status of an exception project after the initial renewal of the project's HAP contract under MAHRA. Accordingly, Plaintiff submits this supplemental reply.

**I.     THE PROVISIONS OF 24 C.F.R. 401.100(b) ARE CONTRARY TO MAHRA**

MAHRA was enacted on October 27, 1997 as part of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations

Act, 1998. *See* 42 U.S.C. § 1437f note. Its purpose was to provide a means for renewing the many Housing Assistance Payments ("HAP") Contracts whose initial terms were beginning to expire in substantial numbers.

Because it was believed that many of those expiring contracts had subsidized rents in excess of the rents in their local markets, MAHRA sought to reduce those above-market rents to the rate of comparable market-rate projects while at the same time protecting those projects with mortgage loans insured by the Federal Housing Administration ("FHA") of HUD. This was to be accomplished by restructuring those mortgage loans through partial or complete forgiveness of their mortgage debt and/or the reduction or postponement of their monthly mortgage payments to a level that the project could afford to operate under with the lower rental payments.

As originally enacted, restructuring applies, and still does, to Eligible Multifamily Housing Projects. MAHRA, §514. An Eligible Multifamily Housing Project was, and is, defined as a project (1) with rents in excess of the rent of comparable properties in the same market area, (2) with a project-based HAP Contract under Section 8(b)(2) of the United States Housing Act of 1937, and (3) with a mortgage loan insured or held by HUD. *Id.*, §512(2). Exempt from restructuring under Section 514(h)(1), even though they might otherwise qualify as Eligible Multifamily Housing Projects, were projects for which the primary financing or mortgage insurance was provided by a unit of state government or a unit of local government, or an agency or instrumentality thereof. *See* Pub. L. No. 105-65, 111 Stat. 1344, 1396 (1997). These projects were termed in Section 524(a)(2) as exception projects, along with several other categories of projects that are exempt from restructuring. *Id.*, 111 Stat. 1408.

2

Under § 524(a)(1) of MAHRA when first enacted, the HAP Contract of a project that did not qualify as an Eligible Multifamily Housing Project could be renewed at "rent levels that do not exceed comparable market rents for the market area". *Id.* This could result in either an increase or decrease in the project's rents. To avoid too substantial a decrease in its rents, a project with above-market rents and which did not qualify as an Eligible Multifamily Housing Project could, except for certain projects receiving Section 8 assistance under HUD's moderate rehabilitation program, elect to be treated as an exception project and have its HAP Contract renewed at the lesser of (i) existing rents adjusted by an operating cost adjustment factor (OCAF) or (ii) a budget-based rent. *Id*. There was no separate provision in MAHRA, as originally enacted, for adjusting a project's Contract Rents after that initial renewal.

As part of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2000, enacted on October 20, 1999, Section 524 of MAHRA was substantially rewritten. *See* Pub. L. No. 106-74, 113 Stat. 1047, 1109-1116 (1999). Section 524 (a)(2) dealing with exception projects became Section 524(b)[1] and still provided for the renewal of the HAP Contracts for such projects, other than certain projects with a contract under the moderate rehabilitation program, at the lesser of the existing rents under the expiring contract as adjusted by an OCAF or rents determined on a budget basis. *Id.*, 113 Stat. 1112.

A new Section 524 (c) was added to provide for rent adjustment after the initial renewal of a HAP Contract under Subsections 524 (a), (b)(1) or (e)(2). *Id.*, 113 Stat. 1113. The rents of contracts renewed under these subsections were to be annually

---

[1] The heading of Section 524(b) was changed from "Exception Projects" under the originally enacted Section 524(a)(2) to "Exception Rents."

3

adjusted by the application of an OCAF or, upon the request of the owner and subject to HUD approval, on a budget basis. However, contracts renewed under subsections (a) and (e)(2) were also subjected to a new rent comparability analysis every five years, with their rents adjusted accordingly. *Id.* HAP Contracts initially renewed under subsection (b)(1), exception projects, were not made subject to a rent comparability analysis and resulting rent adjustments. *Id.*

In addition, Section 514 (h)(1) was amended in 1999 to limit the exemption, from being treated as a Eligible Multifamily Housing Project for those projects whose financing had been provided by a unit of State or local government or an instrumentality thereof in cases where that financing involved FHA mortgage insurance, to only those situations where restructuring would be in conflict with applicable law or agreements governing such financing. *Id.*, 113 Stat. 1116.

## II. CONGRESS IN APPROVING THE MARK-TO-MARKET EXTENSION ACT OF 2001 REJECTED A PROVISION THAT WOULD HAVE AUTHORIZED 24 C.F.R. § 401.100(b)

In January 2002, several amendments were made to MAHRA in connection with the enactment of the Mark-to-Market Extension Act of 2001 ("Extension Act") as part of the Departments of Labor, Health and Human Services, and Education, and Related Agencies Act, 2002. *See* Pub. L. No. 107-116, 115 Stat. 2177, 2220-2228 (2002). This Act was necessary because all provisions of MAHRA, except for Section 524, expired on September 30, 2001.[2]

One of the major changes to MAHRA contained in the Extension Act was to the definition of Eligible Multifamily Housing Project contained in Section 512(2) of MAHRA. This amendment stated that, notwithstanding any of the provisions of Title V

---

[2] Temporary extensions had been passed to keep MAHRA in effect until the Extension Act became law.

4

of the FY 1998 HUD Appropriations Act[3], a project may be treated by HUD as an Eligible Multifamily Housing Project if its HAP contract had been initially renewed under Section 524 of MAHRA, if "the owner consents to such treatment", and if the project met the requirements for eligibility as an Eligible Multifamily Housing Project before the initial renewal of its HAP Contract under Section 524 of MAHRA.

Although the principal motive for Congress in acting on and passing the Extension Act was to keep in force HUD's ability to restructure mortgage loans on Eligible Multifamily Housing Projects upon the expiration of the initial terms[4] of their HAP Contracts, the Act, as passed, contained several other provisions that were added during its consideration by Congress.

Hearings on the need to extend HUD's mark-to-market/ restructuring authority under MAHRA were held in the Senate Banking Committee on June 19, 2001. Among the witnesses were the HUD Assistant Secretary for Housing-FHA Commissioner, *See The Multifamily Assisted Housing Reform and Affordability Act of 1997: Hearing on Exploring the Success of the "Multifamily Assisted Housing Reform and Affordability Act of 1997" and the So-Called Mark-To-Market Legislation Before the S. Subcomm. on Housing and Transportation of the S. Comm. on Banking, Housing, and Urban Affairs,* 107th Cong. 4-6 (2001) (Statement of John C. Weicher), and the Director of the Office of Multifamily Housing Assistance Restructuring. *Id.* 7-13 (Statement of Ira G. Peppercorn). This testimony principally sketched out the successes that had been achieved under MAHRA and the need to maintain HUD's ability to continue its mark-to-market/

---

[3] MAHRA was originally enacted as Title V of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1998. *See* Pub. L. No. 105-65, 111 Stat. 1344, 1384 *et seq.* (1997).

[4] The authorization for HUD to renew contracts pursuant to Section 524 of MAHRA was permanent.

restructuring activities for at least another three years. *Id.* No other specific proposals were advanced, other than the placement of OHMAR under the direct supervision of the Assistant Secretary for Housing, although a set of recommendations was promised for later. *Id.*

On July 26, 2001, Senator Sarbanes, Chairman of the Senate Banking Committee introduced the Mark-to-Market Extension Act of 2001. S. 1254, 107th Cong. (2001). As introduced, S. 1254 contained a proposed amendment to Section 512(2) of MAHRA that included within the definition of an Eligible Multifamily Housing Project a project determined by HUD as having rents that exceeded the rents of comparable properties in the same market area "prior to, and notwithstanding, any renewal of project-based assistance" under MAHRA. *Id.*

This bill was referred to the Banking Committee and reported out of the Committee on August 1, 2001 with an amendment. *Id.* The sole amendment, found in Section 9 of the bill, related to directing the submission of annual reports to the Congress by the Comptroller General of the United States. *Id.* No Committee Report accompanied the reported bill. The Senate never acted on S. 1254.

In the House of Representatives, Rep. Roukema, the Chair of the Subcommittee on Housing and Community Opportunity of the Financial Services Committee, introduced the Mark-to-Market Extension Act of 2001, on July 23, 2001. H.R. 2589, 107th Cong. (2001). No hearings were held on the bill and it was ordered reported by the Financial Services Committee on July 25, 2001, without amendment. The Committee issued a report on September 5, 2001. *See* H.R. Rep. No. 107-196 (2001).

As introduced and reported out of committee, H.R. 2589 only provided for the extension of MAHRA, other than Section 524 which was permanent, to September 30, 2004 and the assignment of oversight over the mark-to-market restructuring program to the HUD Assistant Secretary for Housing.

H.R. 2589 was taken up on the floor of the House of Representatives under Suspension of the Rules on September 24, 2001.  As presented to the House, H.R. 2589 went significantly beyond the provisions of the bill as introduced and subsequently reported out of the Financial Services Committee.  As stated by Rep. Green of Wisconsin, the floor manager of the bill, the revised bill presented to the House "represents a House-Senate consensus."  147 Cong. Rec. H5952 (daily ed. Sept. 24, 2001).

Rep. Carson of Indiana, who was managing the bill on the floor for the minority stated:

> "The bill before us differs somewhat from the bill passed by voice vote in the Committee on Financial Services in July.  However, the changes represent informed bipartisan, bicameral discussions that have taken place over the last few months.  The final product is a good consensus bill with bipartisan support…"  *Id.* at H5954.

These remarks were echoed by Rep. Barney Frank, the ranking minority member of the Subcommittee on Housing and Community Opportunity who stated in reference to the bill, "This is bipartisan.  It is bicameral."  *Id.* at H5954.

Rep. Oxley, Chairman of the Financial Services Committee stated in an insert for the Congressional Record, "The Committee majority and minority staff worked with our Senate counterparts…. Moreover, this Committee worked with the Administration and the Department of Housing and Urban Development to accommodate their concerns."

7

*Id.* at H5955.

H.R. 2589 was approved by the House on September 24, 2001 by a voice vote, *Id.*, and sent to the Senate where no action was taken. However, on October 11, 2001, the House took up and passed H.R. 3061, the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriations Act for the fiscal year ending September 301, 2002. Included in the bill, as Title VI, was the text of H.R. 2589, the Mark-to-Market Extension Act of 2001, as passed by the House in September 2001. *See* 147 Cong. Rec. H6662-6664 (daily ed. Oct. 11, 2001). The President signed H.R. 3061 on January 10, 2002. *See* Pub. L. No. 107-116, 115 Stat. 2177 *et seq.* (2002). Title VI of that Act, the Extension Act, is identical to H.R. 2589 as approved by the House. *Id.*, 115 Stat. 2220-2228.

While the Extension Act incorporated several of the provisions of S. 1254 as reported by the Senate Banking Committee, such as the extension of MAHRA to September 30, 2006 rather than to September 30, 2004, as included in H.R. 3061 and reported by the House Committee on Financial Services, the Act did not include the language of Section 4(8) of the Senate bill amending Section 512(2) of MAHRA to include within the definition of an Eligible Multifamily Housing Project a project whose rents HUD determines exceeded the rents of comparable projects in the same market area "prior to, and notwithstanding, any renewal of project-based assistance" under MAHRA.

The only comparable provision contained in the Extension Act was Section 612(f) which amended Section 512(2) of MAHRA to permit HUD to treat a project as an Eligible Multifamily Housing Project with the owner's consent, if the project is assisted pursuant to a Section 8 contract which had been renewed under Section 524 of MAHRA

and the project had met the other requirements of Section 512(2) before its initial renewal under Section 524.

Since the enactment of the Extension Act, there have been no other amendments to either Section 512(2) or Section 524 of MAHRA that would affect the status of Steinhorst Square Apartments ("Steinhorst") as an exception project. Therefore, the renewal of Steinhorst's HAP Contract's is governed solely by Section 524(c) of MAHRA and the project's mortgage loan is not subject to restructuring.

## Conclusion

MAHRA, as enacted in 1997, clearly provided that a project such as Steinhorst with a mortgage loan financed by an instrumentality of a local government with FHA mortgage insurance, and which has been determined by HUD under Section 514(h)(1) of MAHRA to be exempt from treatment as an Eligible Multifamily Housing Project, is not subject to a redetermination by HUD of the project's status as an exception project. Nor has there been any subsequent amendment to MAHRA giving HUD the authority to make such a redetermination except with the owner's consent. In fact, Congress in 2001, in connection with the passage of the Mark-to-Market Extension Act of 2001, rejected an

amendment to MAHRA that would have granted to HUD the authority to make such a redetermination.[5]

                Respectfully submitted,

June 18, 2007               /s/ Carl A.S. Coan, Jr.
                Carl A.S. Coan, Jr. (D.C. Bar No. 89466)
                Carl A.S. Coan, III (D.C. Bar No. 358034)
                Coan & Lyons
                1100 Connecticut Avenue, N.W.
                Suite 1000
                Washington, DC 20036
                Phone No. 202-728-1070
                Fax No. 202-293-2448

                Attorneys for Plaintiff

---

[5] Plaintiff's counsel was mistaken in his assertion that Theodore Toon, the current HUD Deputy Assistant Secretary for the Office of Assisted Housing Preservation, was involved in directly supporting in 2001 enactment of an amendment to MAHRA, which would have authorized HUD to redetermine a project's status as an exception project at the subsequent renewal of the project's HAP Contract.

10