UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEINHORST ASSOCIATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-813 (HHK) |
| ) | |
| ALPHONSO JACKSON, in his capacity as ) | |
| Secretary of the United States Department of ) | |
| Housing and Urban Development, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Alphonso Jackson, in his capacity as Secretary of the United States Department of Housing and Urban Development ("HUD"), through counsel, respectfully moves this Court to grant summary judgment in favor of the Defendant. In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

Because this is a dispositive motion, the undersigned has not sought Plaintiff's consent before filing it. LCvR 7 (m).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEINHORST ASSOCIATES, )
)
        Plaintiff, )
)
) Civil Action No. 07-813 (HHK)
v. )
)
ALPHONSO JACKSON, in his capacity as )
Secretary of the United States Department of )
Housing and Urban Development, )
)
        Defendant. )
)
)

### DECLARATION OF THEODORE K. TOON

    I, Theodore Toon do hereby make the following declaration under penalty of perjury:

1.     I am the Deputy Assistant Secretary for the Office of Affordable Housing Preservation (OAHP) in HUD Headquarters and have served in that capacity since August of 2005.

2.     The Office of Multifamily Housing Assistance Restructuring (OMHAR) was established by the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA) to administer the Mark-to-Market program until sunset on September 30, 2004. HUD established a new office, OAHP effective October 1, 2004. OAHP was established to assure the smooth continuation of the Mark to Market program (M2M) utilizing authorities that continued after the legislative sunset of OMHAR on September


GOVERNMENT EXHIBIT A

30, 2004. OAHP also provides assistance to affordable housing areas in the oversight and preservation of a wide spectrum of affordable housing programs.

3. I make the following statements based on personal knowledge and information obtained by me during the course of my official duties.

4. Under MAHRA, the statute creating the Mark-to-Market program, upon expiration of a Section 8 subsidy contract, if the project owner intends to renew the Section 8 contract, and the property meets certain other criteria, the owner must elect to restructure the project through M2M.

5. However, mortgages often contain prepayment lockout provisions. MAHRA specifically makes projects that are financed through state or local bond financing, with a mortgage subject to lockout provisions that currently prohibit prepayment of the mortgage, exempt from restructuring under M2M. HUD reviews the mortgage documents to determine that the lockout provision is still active, as most such provisions expire at a date certain. If, upon Section 8 contract expiration, the prepayment lockout provision has expired, that project is **not** exempt from restructuring, and therefore must enter M2M for a restructure if it meets the other criteria.

6. OAHP reviewed Steinhorst's financial documents and discovered that its previous lock out provision expired in April 2006, thus there remained no impediment for Steinhorst to restructure its mortgage. HUD indicated that Steinhorst would not be eligible for Option Four which exempts a project from restructuring.

7. The attorney for the plaintiff is Mr. Carl Coan. Prior to my August 2006 letter to Mr. Coan regarding the subject property, there had been correspondence between myself,

others within OAHP, and Mr. Coan regarding the subject property and the specific issue of the lockout, and project eligibility for M2M. Neither Mr. Coan nor the plaintiff have disputed that the lockout provision has expired nor indicated that Steinhorst would not be unable to restructure its mortgage for any other reason. To my recollection, this correspondence included phone calls, emails, and maybe letters.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: 6/6/07

Theodore K. Toon

This page is located on the U.S. Department of Housing and Urban Development's Homes and Communities Web site at http://www.hud.gov/offices/cir/test061406.cfm.



# HUD Testimony

**STATEMENT OF THEODORE K. TOON**
**Deputy Assistant Secretary**
**Office of Affordable Housing Preservation**
**U.S. Department of Housing and Urban Development**
**Hearing before the United States Senate Banking, Housing, and Urban Affairs Committee, Subcommittee on Housing and Transportation**

**United States Senate**
**"Extension of the Mark-to-Market Program"**

**June 14, 2006**

Thank you Chairman Allard, Ranking Member Reed, and members of the Subcommittee for inviting me here today to testify on the proposed Mark-to-Market Extension Act. The preservation of affordable housing in our communities continues to be a top priority for Secretary Jackson, Assistant Secretary Montgomery and the Department of Housing and Urban Development (HUD).

The Mark-to-Market program, originally created by Congress in 1997 (the Multifamily Assisted Housing Reform and Affordability Act (MAHRA)), and extended in 2001 (the Mark-to-Market Extension Act), reduces rents to market levels upon Section 8 contract expiration and renewal. HUD contracts with private owners of rental units to help ensure a certain number units for occupancy by low-income residents. When those contracts expire and are renewed, if the contract rents are found to be above comparable market rents for similar units in the same area, the Mark-to-Market program reduces the new contract rent for those units to market levels. By bringing above-market Section 8 rental rents in line with market levels, HUD controls costs of the Section 8 program and maximizes the number of families that can be helped by such housing assistance. The Mark-to-Market authorities will sunset September 30, 2006. The bill that you have introduced, Mr. Chairman, proposes a five-year extension of the existing Mark-to-Market restructuring authorities, administered by HUD.

As you are aware, under Mark-to-Market, HUD has the mandate to reduce rents to market levels, saving dollars on project-based Section 8 expenditures. Mark-to-Market also includes authorities essential to maintaining the physical and financial viability of the properties with reduced rents. In Mark-to-Market, HUD staff oversees a network of public and private entities to analyze property viability, recommend repairs and other preservation activities, and if necessary re-size the FHA-insured debt to a level that can be serviced by the reduced rents. If debt is re-sized, the owner enters into a long-term use agreement through which the property is preserved as affordable housing for at least 30 years. To be sure, this is a significant tool in HUD's preservation toolbox. Unfortunately, HUD's mandate to reduce rents will continue beyond September 30, 2006, but the Mark-to-Market authorities will not.

Over the past nine years, HUD has been very successful at balancing the dual Mark-to-Market program goals of reducing long-term Section 8 subsidy costs while preserving affordable housing. To date, HUD has preserved 2,200 properties around the country comprising over 188,000 affordable housing units, and in so doing we have promoted the long-term physical and financial viability of these properties. The program has generated net savings totaling $2 billion to HUD and the American taxpayers. And by preserving affordable housing, we have provided stability for many low income families and the communities where they live.

In discussing reauthorization of Mark-to-Market, I think it's important to consider what has been achieved thus far. To date, this program has preserved properties in all 50 states and the District of Columbia. For example, Chairman Allard, in Colorado, HUD has preserved 31 properties with 1,800 units of affordable housing. In Rhode Island, Senator Reed, 12 properties with more than 1,000 housing units have been preserved, and another 21 properties with more than 2,000 units will become eligible under this proposed extension. (Attachment A shows the number of properties and units preserved through and active in Mark-to-Market, and the potential referrals over the next five years.) Once restructured, these properties are physically improved and on solid financial footing. That is a "win-win" situation for the tenants and the community.

Not every property can or will be preserved through Mark-to-Market. While preservation is a primary goal of the program, Congress has made it very clear that prudent use of limited resources is an equally important goal. HUD has taken this charge seriously. There have been, and will continue to be, properties referred into Mark-to-Market that simply cannot be responsibly preserved. These projects may be too expensive, functionally obsolete, or located in markets with ready availability of replacement housing.

- In other situations, properties that in the Department's opinion require restructuring do not receive the benefits of the program because the owners refuse to accept the terms of the restructuring. In these cases, HUD makes the determination that the project is infeasible for restructuring. These are difficult decisions, made with consideration of the needs of the affected residents and communities, and with cooperation from both our office and the HUD field offices. Properties that need restructuring but don't accomplish it are closely monitored by HUD to allow early intervention if the property deteriorates. The analysis done while in Mark-to-Market informs and shapes the Department's decisions on other management options for the properties thereafter.

Now, let us turn to the discussion before us today, which is the proposed reauthorization of Mark-to-Market. According to the Department's analysis of potential referrals, if Mark-to-Market is extended as proposed in this bill, over five years (FY 2007-11) nearly 800 properties with 78,000 affordable units will meet the eligibility requirements for Mark-to-Market restructuring. These are project-based Section 8 properties with expiring Section 8 contracts, FHA-insured mortgages, and contract rents above Fair Market Rents. This is the universe of properties that, absent extension of restructuring authorities, will represent the most at-risk properties in HUD's insured mortgage portfolio because of the required reductions in rents.

In addition to the lost opportunity to preserve another 800 properties, or 78,000 units of affordable housing, the sunset of Mark-to-Market may also expose the FHA Insurance Fund to considerable risk. This is because MAHRA, the legislation

that created Mark-to-Market, will continue to require that contract rents on subsidized FHA-insured properties get marked down to market levels upon contract renewal, regardless of whether the program is extended. Reductions in rents to market levels will result in many properties being unable to pay their operating costs and/or their mortgage payments. As we see with other properties in negative cash flow positions, these property owners and managers will be faced with the decision of paying for utilities and routine maintenance, or making their mortgage payments.

It is important to keep in mind that FHA insures the underlying mortgages on these properties. Not only will we see physical deterioration of the projects, which will negatively impact residents, and the overall communities, but the mortgages on these projects also represent real, quantifiable default and foreclosure risk to the FHA Insurance Fund – risk that is estimated to total more than $400 million over the next five years.

In conclusion, I want to thank you for affording our Department the opportunity to testify on this legislation. Congress' intent in creating and then extending Mark-to-Market was that long-term costs had to be reduced, and that it would be less expensive and more effective to proactively address the physical, financial, and managerial challenges facing our affordable housing portfolio than to wait for the properties to physically decline and financially fail. This belief has been proven true by the successful restructuring of 188,000 apartment units across the country, which has also helped improve the lives of thousands of low-income families who call these units home.

On behalf of the entire Department, I look forward to working with you to ensure that we continue to provide affordable housing in a cost-effective man

###

Attachment A - Testimony of HUD DAS Theodore Toon

Content updated June 14, 2006

**U.S. Department of Housing and Urban Development**
451 7th Street, S.W., Washington, DC 20410
Telephone: (202) 708-1112   Find the address of a HUD office near you