UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEINHORST ASSOCIATES,

Plaintiff,

v.

ALPHONSO JACKSON, in his capacity as Secretary of the United States Department of Housing and Urban Development,

Defendant.

Civil Action No. 07-813 (HHK)

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Alphonso Jackson, in his capacity as Secretary of the United States Department of Housing and Urban Development ("HUD"), through counsel, respectfully submits this reply in support of his motion for summary judgment.

Plaintiff Steinhorst Associates ("Steinhorst") seeks to compel HUD to approve the renewal of its housing contract under an exemption for which the Plaintiff no longer qualifies. Essentially, the Plaintiff insists that it should be able to continue into perpetuity charging rents higher than market rates. Such a goal is in direct contravention of the reason why the Multifamily Assisted Housing Reform and Affordability Act ("MAHRA") was enacted, namely to reduce the federal government's cost of rental subsidies and to ensure the continued viability of multifamily rental housing projects.

The Plaintiff concedes there are rent reduction and mortgage loan restructuring requirements under Section 514 of MAHRA. See Plt. Memo, p. 4, fn 1. Plaintiff even concedes that those requirements must be met - unless an exemption applies - at an initial renewal of a

contract. "Section 514 of MAHRA requires that for an 'Initial Renewal,' an 'Eligible Multifamily Housing Project' will have its Contract Rents reduced in accordance with the mortgage restructuring and rental assistance sufficiency plan for the project. In addition, the project will have its mortgage loan restructured to enable the project to meet its financial obligations at the reduced Contract Rents." See Plt. Memo, p. 4. Plaintiff, however, objects to the new regulation 24 C.F.R. 401.100(b) that clarifies that MAHRA's restructuring requirements must be met - unless an exemption applies - at any renewal of a contract, not just the initial renewal.

## ARGUMENT

The Plaintiff incorrectly argues that: 1) HUD's new regulation, 24 C.F.R. § 401.100(b), is invalid due to the method by which it was adopted; 2) HUD's reliance on 24 C.F.R. § 401.100(b) is arbitrary and capricious; and 3) 24 C.F.R. § 401.100(b) is contrary to MAHRA. Each argument fails for the reasons set forth below.

### I. 24 C.F.R. § 401.100(b) is an interpretive rule and not subject to notice and comment procedures

In promulgating rules, federal administrative agencies are required by § 3 of the Administrative Procedure Act ("APA"), 5 U.S.C.A. § 553, to provide notice of the proposed rule and accept and consider comments from interested persons. "Interpretative" rules are exempt from this requirement under 5 U.S.C.A. § 553(b)(3)(A). Plaintiff argues that because HUD did not follow notice and comment procedures for the new regulation, 24 C.F.R. § 401.100(b), the regulation is invalid. Regulation 24 C.F.R. § 401.100(b) however, is an interpretative rule. Thus, HUD was not required to follow notice and comment procedures. Therefore, 24 C.F.R. § 401.100(b) was properly adopted.

Interpretative rules for purposes of 5 U.S.C.A. § 553 are those that clarify, interpret, or explain existing law, state an administrative officer's understanding of a statutory or regulatory term, and/or remind affected parties of their responsibilities under existing law, or some similar language. Batterton v. Marshall, 648 F.2d 694, 701 (D.C. Cir. 1980) ("An 'interpretative rule' describes the agency's view of the meaning of an existing statute or regulation); Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C. Cir. 1952) ("'substantive rules' or 'legislative rules' are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means."); Spirit of Sage Council v. Norton, 294 F. Supp. 2d 67, 86 (D.D.C. 2003) (noting that a "legislative rule" or "substantive rule" requiring notice and comment procedures is one that does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy); Sprint Corp. v. F.C.C., 315 F.3d 369, 374 (D.C. Cir. 2003) (finding a clarification of an existing agency rule may be embodied in an interpretive rule that is exempt from notice and comment requirements, new rules that work substantive changes in prior regulations are subject to the notice and comment procedures of the APA).

While a substantive regulation is subject to the procedural requirements of 5 U.S.C.A. § 553, an interpretive rule is not. See e.g., Batterton, 648 F.2d at 701. The D.C. Circuit has described the distinction between an interpretive and substantive rule: the "critical" feature of the procedural exception "is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency ...." The issue, therefore, "is one of degree," and our task is to identify which substantive effects are "sufficiently grave so that notice and comment are needed

to safeguard the policies underlying the APA." JEM Broadcasting Co., v. FCC, 22 F.3d 320, 326-27 (D.C Cir. 1994).

In National Family Planning v. Sullivan, 979 F.2d 227 (D.C. Cir. 1992), the D.C. Circuit concluded that a pronouncement seeking to modify the rule against abortion counseling was not an interpretative rule but a legislative rule for which notice and comment procedures were required. The Department of Health and Human Services (HHS) had ruled that a 1988 regulation, previously construed to prohibit abortion counseling or referral of any kind in Title X programs, would be interpreted to permit doctors to counsel on abortion within context of doctor-patient relationship. The Court found that three characteristics of the HHS pronouncement led to the conclusion that the rule was not interpretative, as the agency had contended. National Family Planning, 979 F.2d at 237-238. First the rule "does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy". Second the rule was motivated by "a previously unacknowledged concern." Third the rule granted rights, imposed obligations, or produced other significant effects on private interests. Although courts find that a rule is not interpretative where the rule does more than "clarify," they do so for the purpose of determining whether the agency intended the rule to have binding effect. National Family Planning, 979 F.2d 237-240 (D.C. Cir. 1992).

*1. HUD's new regulation simply clarifies and explains a regulatory term, confirms a regulatory requirement and maintains a consistent agency policy*

MAHRA requires debt restructuring. HUD's new regulation clarifies when eligibility for debt restructuring occurs. Title 24 of the Code of Federal Regulations § 401.100(b) is an interpretative rule because it simply clarifies and explains MAHRA regulatory terms, confirms a regulatory requirement and maintains a consistent agency policy.

Congress enacted MAHRA in 1997 to reduce the federal government's cost of rental subsidies and to ensure the continued viability of multifamily rental housing projects. See § 511(b) of MAHRA; H.R. Conf. Rep. No. 297, 105th Cong., 1st Sess. 137-39(1997). MAHRA reduces rents by requiring the Section 8 contract project owners to restructure their debt on property, i.e., refinancing their mortgages. See § 514 of MAHRA; 24 C.F.R. § 401. MAHRA requires owners of eligible multifamily housing projects with expiring project-based assistance contracts to enter into mortgage restructuring and rental assistance sufficiency plans. See § 514.

New regulation, 24 C.F.R. § 401.100 (b), helps to achieve MAHRA's goals by clarifying when eligibility for mortgage restructuring is determined. It states:

> (b) When is eligibility determined? Eligibility for a Restructuring Plan under paragraph (a) of this section is determined by the status of a project on the earlier of the termination or expiration date of the project-based assistance contract, which includes a contract renewed under section 524 of MAHRA, or the date of the owner's request to HUD for a Restructuring Plan. Eligibility is not affected by a subsequent change in status, such as contract extension under § 401.600 or part 402 of this chapter.

24 C.F.R. § 401.100(b). Section 514 of MAHRA requires that for an 'Initial Renewal,' a housing project will have its mortgage loan restructured to enable the project to meet its financial obligations to reduced Contract Rents. See also 24 C.F.R.§ 401.100. New regulation 24 C.F.R. § 401.100 (b) clarifies that MAHRA requires that a project have its mortgage loan restructured not just at a contract's initial renewal, but at any renewal thereafter. The regulation addresses the odd scenario where a housing project was unable to restructure its loan at the time of its initial renewal of its contract and thus qualified for an exemption but is able to restructure at the time of the second contract renewal. Without this regulation, a housing project could ironically avoid the restructuring requirements of MAHRA indefinitely and continue to charge rents above

market value.[1] Thus, the regulation is not only consistent with MAHRA, but in fact confirms a regulatory requirement and maintains a consistent agency policy regarding mortgage restructuring.

*2. 24 C.F.R. § 401.100 (b) was motivated by a previously acknowledged concern*

An ongoing concern for HUD is the affordability of housing for low income families. MAHRA reduces rents by requiring the Section 8 contract project owners to restructure their debt on the property. See § 514 of MAHRA**.** MAHRA's legislative history addresses the need for and benefits of debt restructuring, generally, and focuses exclusively on debt restructuring at initial renewal. Nothing in the history specifically reflects a Congressional intent to limit the determination of debt-restructuring eligibility to initial renewal. Moreover the comments convey a Congressional intent and expectation that the Department use its authority under MAHRA "to preserve the existing Section 8 project-based portfolio of affordable housing to the greatest extent feasible." 143 Cong. Rec. 22076 (daily ed. Oct. 9, 1997)(statement of Sen. Sarbanes). Therefore, HUD's motivation for issuing 24 C.F.R.§ 401.100 (b) was the Congressionally acknowledged concern to preserve affordable housing under Section 8 and MAHRA's goal of restructuring property debt in order to reduce rents.

---

[1] Plaintiff was unable to restructure its loan at its initial contract renewal, and therefore Plaintiff qualified for an exemption to restructuring its loan. Plaintiff is now able to restructure its loan - at the time of its request for the second renewal of its contract, but objects to having to restructure and instead incredibly argues that the new regulation is inconsistent with MAHRA.

*3. 24 C.F.R. § 401.100 (b) neither imposes new obligations, nor produces other significant effects on private interests*

In essence, MAHRA reduces rents by requiring the Section 8 contract project owners to restructure their debt on the property, i.e., refinancing their mortgages. See § 514 MAHRA; 24 C.F.R. § 401. If a property owner is faced with an impediment to restructure the debt on a Section 8 contract property, the property may qualify as an "exception project" under Option Four of HUD's Section 8 Renewal Guide--Renewal of Projects Exempted from the Office of Multifamily Housing Assistance Restructuring ("OMHAR"). Section 524(b) of MAHRA defines "exception projects" as "those that may be renewed at rents above market." Section 524(b).

Here, Plaintiff renewed its original twenty year HAP contract in 2001 for five additional years in accordance with Section 524(b)(1) of MAHRA and Option Four of HUD's Section 8 Renewal Guide. See Plt's Memo p. 2. At that time, Plaintiff had an impediment for restructuring its debt and was consequently found to be exempt from the requirement to restructure its debt. See Exhibit A, Theodore Toon Declaration ("Toon Dec.") ¶ 6. Upon the expiration of the five-year term, plaintiff requested another renewal under Option Four. Plt's Mt Expedited Hearing, p. 2. But Plaintiff no longer faces an impediment to restructuring its debt and thus no longer qualifies for Option Four.[2] See Toon Dec. ¶ 6. Accordingly, the new regulation, 24 C.F.R. 401.100 (b), provides that the Plaintiff will now have to comply with

---

[2] Plaintiff is no longer eligible for Option Four on the basis that it (1) no longer faces an impediment to restructuring its loan - in other words - no longer is subject to primary financing with terms that would make debt restructuring impossible, as described in section 514(h)(1); (2) is not exempt from debt restructuring under another provision of section 514(h); and (3) now satisfies the definition of "eligible multifamily housing project" in section 512(2). See section 524(b)(2).

MAHRA because it no longer qualifies for the previous exemption. Thus, Section 401.100 (b) neither imposes new obligations, nor produces other significant effects on the private interests of the Plaintiff other than the directive of MAHRA.

**II. HUD's reliance on 24 C.F.R. § 401.100 (b) is neither arbitrary nor capricious**

Plaintiff seeks to obtain an injunction that would allow it to charge rents higher than market rates under an exemption for which it no longer qualifies. The application of 24 C.F.R. § 401.100 (b) is appropriate because the Plaintiff can now restructure its debt and is thus now able to comply with MAHRA. Since the Plaintiff no longer faces an impediment in restructuring its debt, it may now reduce its rental costs from above market rates. Therefore, HUD's reliance on the new regulation is consistent with MAHRA's goal of reducing the federal government's cost of rental subsidies and to ensure the continued viability of multifamily rental housing projects. See § 511(b) of MAHRA; H.R. Conf. Rep. No. 297, 105th Cong., 1st Sess. 137-39(1997). Consequently, HUD's reliance on the new regulation is neither arbitrary nor capricious.

**III. 24 C.F.R. § 401.100(b) is consistent with MAHRA**

Plaintiff argues that 24 C.F.R. § 401.100 is contrary to MAHRA in light of section 524(c)(1) of MAHRA. Section 524 (c) of MAHRA and regulation 24 C.F.R. § 401.100 (b) are not in conflict but rather are unrelated. Section 524 (c) lays out the "Rent adjustment after renewal of contract" requirements, while 24 C.F.R. § 401.100 (b) concerns contract renewal eligibility. Section 524(c) provides that after the initial renewal of a contract for assistance under Section 8 pursuant to subsection (a), (b)(1), or (e)(2), the Secretary shall annually adjust the rents, or upon request of the owner and approval of the Secretary, on a budget basis. Thus,

Section 524(c) deals with *annual* rent adjustments to *ongoing* contracts, not renewal of expired contracts. The initial renewal of Plaintiff's contract expired in 2006. Section 524(c) does not apply to the eligibility of the Plaintiff to renew its contract.

Plaintiff contends that because the second sentence of section 524(c)(1) requires HUD to compare a project's current rents with comparable market rents every five years, section 524(c)(1) applies to both initial renewals and subsequent renewals. The second sentence of section 524(c)(1) refers to contracts renewed under section "[524](a)" and "[524](e)(2)" of MAHRA and such contracts can have a term of 10 years or more.[3] 524(c)(1). Because contracts with terms of 10 years or more are not renewed every five years, section 524(c)(1) is properly interpreted as addressing a rent adjustment every five years to an ongoing contract, not to the subsequent renewal of an expired contract.[4]

The Defendant's interpretation of MAHRA is consistent with that actual language of the statute. Moreover, an agency's interpretation is entitled to some deference. Skidmore v. Swift & Co., 323 U.S. 134, 139-140 (1944) (agency's interpretation merits some deference regardless of its form, given the "specialized experience and broader investigations and information"

[3] Projects/HAP Contracts renewed under 524(a):
- Entitlement MU2M, Option One-A, 524(a)(4)(A)
- Discretionary MU2M, Option One –B, 524(a)(4)(C)
- Chapter 15, Mark-up-to-Budget, 524(a)(4)(C) (for nonprofits)
- OCAF or budget-based rent increase, Option Two, 524(a)(4)(C)
- Simple reduction of over-market rents to market, 524(a)(4)(B)

Projects renewed under 524(e)(2): Demonstration Projects. See 524(e)(2)(B).

[4] Section 524(c)(1) requires HUD to not only provide an annual rent adjustment but to adjust rents upwards or downwards every five years to ensure that project rents throughout the contract term remain in sync with rents for comparable unassisted rental units in the market area.

available to the agency and the value of uniformity in its administrative and judicial understanding of what a national law requires).[5]

[5] Plaintiff's suggestion that the Defendant should have submitted the agency record to its dispositive motion is disingenuous. Pt. Memo, p. 11. The dispute at issue is not the agency record, but the interpretation of the MAHRA Act and HUD's regulations. Plaintiff does not dispute the key facts, that it no longer faces an impediment to restructuring its loan and that it presently seeks a renewal of its contract. Rather, Plaintiff objects to the new regulation that clarifies that a project's eligibility for restructuring its loan is determined at the renewal of the project's contract.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's request for an injunction and grant summary judgment in favor of the Defendant.

October 25, 2007

Respectfully submitted,

_________________________/s/________________
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_________________________/s/________________
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.

_________________________/s/________________
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153