UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEINHORST ASSOCIATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-813 (HHK) |
| ) | |
| ALPHONSO JACKSON, in his capacity as ) | |
| Secretary of the United States Department of ) | |
| Housing And Urban Development, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

In accordance with Fed. R. Civ. P. 56 and LCvR 56.1, Plaintiff hereby moves the Court for summary judgment in its favor.  More specifically, Plaintiff moves the Court for a declaratory judgment declaring: (1) that HUD's refusal to approval the renewal of Plaintiff's HAP Contracts under Option Four of HUD's Section 8 Renewal Guide is arbitrary, capricious and not otherwise in accordance with law; (2) that Steinhorst Square Apartments is, and will always be, an "exception project"; and (3) that Plaintiff is entitled to renew its HAP Contracts under Option Four, as in effect before December 12, 2006. Consistent with such a declaratory judgment, Plaintiff further moves the Court to order HUD to approve the renewal of Plaintiff's HAP Contracts under Option Four, as in effect before December 12, 2006, retroactive to October 1, 2007.  In support of its motion, Plaintiff relies on the pleadings and other documents filed in this case and the memorandum of points and authorities and statement of material facts not in dispute filed by Plaintiff in conjunction with this motion.

November 7, 2007                          /s/ Carl A.S. Coan, Jr.
                                         Carl A.S. Coan, Jr. (D.C. Bar No. 89466)
                                         Carl A.S. Coan, III (D.C. Bar No. 358034)
                                         Coan & Lyons
                                         1100 Connecticut Ave., N.W.
                                         Suite 1000
                                         Washington, DC 20036
                                         Phone No. 202-728-1070
                                         Fax No. 202-293-2448

                                         Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEINHORST ASSOCIATES,                    )
                                          )
                         Plaintiff,       )
                                          )
        v.                                )    Civil Action No. 07-813 (HHK)
                                          )
ALPHONSO JACKSON, in his capacity as      )
Secretary of the United States Department of )
Housing And Urban Development,            )
                                          )
                                          )
                         Defendant.       )
_____)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff submits this memorandum of points and authorities in support of its cross-motion for summary judgment.

## INTRODUCTION

Plaintiff has challenged HUD's refusal to approve the renewal of Plaintiff's HAP contracts under Option Four of HUD's Section 8 Renewal Guide, as in effect before December 12, 2006.  For the reasons discussed below, the Court should grant Plaintiff's Cross-Motion for Summary Judgment.

## FACTS

HUD is authorized by Section 8 of the United States Housing Act of 1937 ("Section 8") to provide rent subsidies on behalf of low-income persons living in rental housing owned primarily by private persons and entities.  *See* 42 U.S.C. § 1437f.  HUD

provides this assistance in accordance with a Housing Assistance Payments ("HAP") Contract.  A HAP Contract may be between the owner of the rental housing and either a public housing agency or HUD.

HUD has implemented Section 8 through several distinct programs.  Two of these programs are the Section 8 Programs for New Construction and Substantial Rehabilitation.  *See* 24 C.F.R. Parts 880 and 881.

In 1997, Congress enacted the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA").  42 U.S.C. § 1437f note.  HUD has implemented MAHRA through regulations, *See* 24 C.F.R. Parts 401 and 402, various notices and its Section 8 Renewal Guide ("Renewal Guide").

Plaintiff is the owner of Steinhorst Square Apartments ("Steinhorst Square"), a 100-unit multifamily rental housing project located in Utica, New York that was developed for occupancy by low-income elderly persons.  Declaration of Gerald Slavet ("Slavet Dec.") ¶ 2.[1]  Steinhorst Square is managed by MB Management Company.  *Id*. Steinhorst Square was developed in two stages.  *Id*. ¶ 3.  The first stage was the construction of sixty units built under HUD's Section 8 New Construction Program.  *Id*. The second stage was the rehabilitation of forty units that were rehabilitated under HUD's Section 8 Substantial Rehabilitation Program.  *Id*.

Ninety-nine of the units at Steinhorst Square are covered by a project-based Section 8 HAP Contract between Plaintiff and the Municipal Housing Authority of the City of Utica, New York.  *Id*. ¶ 4.  There were two stages to Plaintiff's original HAP Contract.  *Id*.  Stage 1 of the original HAP Contract was effective September 7, 1981 and

---

[1] The Declaration of Gerald Slavet is submitted with this Memorandum of Points and Authorities.

expired on September 6, 2001. *Id.* Stage 2 of the original HAP Contract was effective November 12, 1981 and expired on November 11, 2001. *Id.*

When both stages of Plaintiff's original HAP Contract expired in 2001, Plaintiff requested that the Contract be renewed under Option Four of the Renewal Guide.[2] *Id.* ¶ 5. Option Four is available to an exception project and permits the initial renewal of a HAP Contract under MAHRA with new rents at the lesser of the rents in effect when the HAP Contract expires, as adjusted by an operating cost adjustment factor ("OCAF"), or rents established on a budget basis. MAHRA, § 524(b); Renewal Guide, Sections 6-1 and 6-2. An exception project is a project that is not an "Eligible Multifamily Housing Project," as defined by Section 512(2) of MAHRA, or that is exempt from mortgage restructuring pursuant to Section 514(h) of MAHRA. Renewal Guide, Section 6-1A; MAHRA, § 514(h).

HUD approved the request to renew Plaintiff's original HAP Contract under Option Four because HUD determined that Steinhorst Square was, under Section 514(h) of MAHRA, an exception project. Slavet Dec. ¶ 5. A Renewal HAP Contract for each stage was executed in November 2001. *Id.* ¶ 6. The Stage 1 Renewal Contract was effective September 7, 2001 and the Stage 2 Renewal Contract was effective November 12, 2001. *Id.* Each contract was for five years. *Id.*

On November 30, 2006, MB Management Company, on behalf of Plaintiff, requested in writing that HUD renew both the Stage 1 and Stage 2 Renewal HAP Contracts under Option Four retroactive to their expiration dates. Slavet Dec. ¶ 9. HUD denied MB's request on January 17, 2007 and directed MB to resubmit its renewal request under another Option of the Renewal Guide. *Id.*

---

[2] The Renewal Guide specifies five options for the renewal of a HAP Contract under MAHRA.

**ARGUMENT**

HUD's refusal to approve the renewal of Plaintiff's HAP Contracts under Section 524 of MAHRA and Option Four of the Renewal Guide is contrary to MAHRA.  In addition, 24 C.F.R. § 401.100(b), the regulation on which HUD has based its refusal is invalid.  Therefore, Plaintiff is entitled to summary judgment in its favor.

## I.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when the pleadings and other evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *Wright v. Sony Pictures Entertainment Inc.,* 394 F. Supp.2d 27, 30 (D.D.C. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  After the moving party satisfies its initial burden, "the nonmoving party must demonstrate 'specific facts showing that there is a genuine issue for trial'".  *Rashid v. U.S. Dep't of HHS,* 2000 U.S. Dist. LEXIS 22717, at *6.  (D.D.C. 2000) (quoting *Celotex,* 477 U.S. at 324; *McKinney v. Dole,* 765 F.2d. 1129, 1135 (D.C. Cir 1985)).

"The substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  All inferences must be viewed in the light most favorable to the nonmoving party.  *Tao v. Freeh,* 27 F. 3d 635, 638 (D.C. Cir. 1994) (citing *Anderson*, 477 U.S. at 250, 255).

### B.    Administrative Procedure Act

The scope of review under 5 U.S.C. § 706(2)(A) is narrow and a court may not substitute its judgment for the agency's.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Nevertheless, an agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Id.* (*quoting Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).  In reviewing an agency's explanation, a court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Id.* (*quoting Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

"Normally, an agency rule would be arbitrary and capricious if the agency has (1) relied on factors which Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, (3) offered an explanation for its decision that runs counter to the evidence before the agency, or (4) is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given."  *Id.* (*quoting SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (numbers in parenthesis added).

II.    **PLAINTIFF'S HAP CONTRACTS MAY NOT BE RENEWED UNDER THE RESTRUCURING PROVISIONS OF MAHRA BECAUSE STEINHORST SQUARE IS NOT AN ELIGIBLE MULTIFAMILY HOUSING PROJECT**

HUD has determined under its so-called new regulation, 24 C.F.R. § 401.100(b), that the Plaintiff is now eligible for mortgage restructuring under Section 514 of MAHRA and therefore no longer eligible for the renewal of Plaintiff's HAP Contracts under Option Four. Mot. 6.[3] Restructuring, i.e. refinancing of an owner's mortgage loan, is authorized by Section 514 of MAHRA. However, Section 514 is only applicable to an "Eligible Multifamily Housing Project." *See* MAHRA, § 514(a)(1).

Section 512(2) defines an "Eligible Multifamily Housing Project" as a project that (1) has above market rents, (2) "is covered in whole or in part by a contract for project-based assistance under – (i) the new construction or substantial rehabilitation program under section 8(b)(2) of the United States Housing Act of 1937… (as in effect before October 1, 1983)," and (3) has a mortgage loan insured or held by HUD. Although Steinhorst Square satisfies criteria 1 and 3, it does not satisfy the second criterion.

Section 8(b)(2) of the United States Housing Act of 1937 authorized HUD, or a public housing agency, to enter into a HAP Contract, including Plaintiff's original HAP Contract, with the owner of a multifamily rental housing project for the provision of project-based assistance under HUD's New Construction and Substantial Rehabilitation Programs.[4] However, from the date of its enactment in 1974 until 1996, no provision of Section 8 authorized the renewal of HAP Contracts executed under the authority of

---

[3] "Mot." refers to "Defendant's Motion for Summary Judgment" filed on July 18, 2007.

[4] As noted below, Section 8(b)(2) was repealed in 1983. However, at the time of its repeal, in relevant part, Section 8(b)(2) stated: "[T]he Secretary is authorized to make assistance payments pursuant to contracts with owners or prospective owners who agree to construct or substantially rehabilitate housing in which some or all of the units shall be available for occupancy by lower income families in accordance with the provisions of this section."

Section 8(b)(2).  Therefore, in 1996, Congress authorized the renewal of expiring New

Construction and Substantial Rehabilitation HAP Contracts.  *See* Pub. L. No. 104-99,

§ 405, 110 Stat. 26, 44 (1996).

     Congress later extended this renewal authority.  *See* Pub. L. No. 104-204, § 211,

110 Stat. 2874, 2895-96 (1996).  However, this extension of the authority for renewing an

expiring project-based New Construction or Substantial Rehabilitation HAP Contract was

limited to contracts that expired in fiscal year 1997, i.e. October 1, 1996 – September 30,

1997.  *Id.*

     Defendant asserts that, "Congress enacted the MAHRA Act in 1997 to reduce the

federal government's cost of rental subsidies and to ensure the continued viability of

multifamily rental housing projects," Mot. 6-7.  However, MAHRA states nine different

purposes.  *See* MAHRA, § 511(b)(1)-(9).[5]  Moreover, MAHRA was necessary to provide

HUD with the authority to renew project-based New Construction and Substantial

Rehabilitation HAP Contracts that expired after September 30, 1997.  Without MAHRA,

HUD would have no authority to renew project-based New Construction and Substantial

Rehabilitation HAP Contracts that expire after September 30, 1997.

     Accordingly, Section 515(a)(1) of MAHRA authorizes the renewal of an expiring

project-based HAP Contract "on an eligible multifamily housing project."  HAP

Contracts renewed under the authority of Section 515(a) are renewed in accordance with

the provisions of Section 514 of MAHRA.  In addition, Section 524(a)(1) of MAHRA

authorizes the renewal of all other expiring project-based HAP Contracts.

---

[5] One of the nine purposes of MAHRA is "to protect the interest of project owners and managers because
they are partners of the Federal Government in meeting the affordable housing needs of the Nation through
the section 8 rental housing assistance program."  MAHRA, § 511(b)(7).

When Plaintiff's original HAP Contract expired in 2001, it was not legally possible to renew Plaintiff's original HAP Contract under Section 8(b)(2) because Section 8(b)(2) was repealed effective October 1, 1983.  *See* Pub. L. No. 98-181, § 209, 97 Stat. 1153, 1183 (1983).  Moreover, as discussed above, Section 8(b)(2) related to the execution of a project's original HAP Contract, i.e. the contract that was executed in connection with a project's original construction or substantial rehabilitation under Section 8.  When those contracts expired at the end of their initial terms, to the extent they were renewed, they were renewed under the authority first granted by Congress in 1996 and afterward in MAHRA. Therefore, Plaintiff's original HAP Contract was not renewed under Section 8(b)(2).  Rather, as acknowledged by Defendant, it was renewed in accordance with Section 524 of MAHRA.  Mot. 3.

Clearly, Steinhorst Square "is [not] covered in whole or in part by a contract for project-based assistance under… the new construction or substantial rehabilitation program under section 8(b)(2)…"  Therefore, Steinhorst Square is not an "Eligible Multifamily Housing Project", as defined by MAHRA.  Since Steinhorst Square is not an "Eligible Multifamily Housing Project," there is no authority to renew Plaintiff's HAP Contracts in accordance with section 515 and under the restructuring provisions of Section 514 of MAHRA.  Accordingly, HUD's decision requiring the renewal of Plaintiff's HAP Contracts pursuant to Sections 514 and 515 of MAHRA is expressly contrary to MAHRA.

### III.    SECTION 524(c)(1) OF MAHRA REQUIRES THAT PLAINTIFF'S HAP CONTRACTS BE RENEWED UNDER OPTION FOUR

Section 524 (c) of MAHRA states:

(c) Rent adjustments after renewal of contract.—

(1) Required.—After the initial renewal of a contract for assistance under section 8 of the United States Housing Act of 1937 pursuant to subsection (a), (b)(1), or (e)(2), the Secretary shall annually adjust the rents using an operating cost adjustment factor established by the Secretary (which shall not result in a negative adjustment) or, upon the request of the owner and subject to approval of the Secretary, on a budget basis.  In the case of projects with contracts renewed pursuant to subsection (a) or pursuant to subsection (e)(2) at rent levels equal to comparable market rents for the market area, at the expiration of each 5-year period, the Secretary shall compare existing rents with comparable market rents for the market area and may make any adjustments in the rent necessary to maintain the contract rents at a level not greater than comparable market rents or to increase rents to comparable market rents.

(2) Discretionary.—In addition to review and adjustment required under paragraph (1), in the case of projects with contracts renewed pursuant to subsection (a) or pursuant to subsection (e)(2) at rent levels equal to comparable market rents for the market area, the Secretary may, at the discretion of the Secretary but only once within each 5-year period referred to in paragraph (1), conduct a comparison of rents for a project and adjust the rents accordingly to maintain the contract rents at a level not greater than comparable market rents or to increase rents to comparable market rents.

The meaning of Section 524(c)(1) is patent.  For HAP Contracts initially renewed under Sections 524(a), 524(b)(1) or (524)(e)(2) of MAHRA, HUD "shall annually adjust" a project's rents using an OCAF, unless the project's owner requests that the rents be adjusted on a budget basis, and HUD approves the request.  There is no exception for adjustments to a project's rents when its HAP Contract expires and is renewed under MAHRA again.  Therefore, the requirement of Section 524(c)(1) to adjust a project's rents annually with an OCAF for HAP Contracts initially renewed under Sections 524(a), 524(b)(1) or 524(e)(2) is equally applicable to adjustments during the term of an "Initial

Renewal"[6] and to all renewals after an "Initial Renewal" under Section 524, and the required adjustment of the project's rents at such future renewals.

There are only two exceptions to the requirement of Section 524(c)(1) that a project's rents be adjusted annually by an OCAF after an "Initial Renewal" under Section 524. The first exception, in accordance with Section 524(c)(1), permits an adjustment to the rents of projects initially renewed under either Section 524(a) or 524(e)(2), "at the expiration of each 5-year period", to an amount that is equal to the comparable market rents.

The second exception, in accordance with Section 524(c)(2), permits an adjustment, once during each 5-year period after the "Initial Renewal" of a HAP Contract under Section 524, of a project's rents to an amount that is equal to the comparable market rents. Again, however, this exception is only applicable to HAP Contracts initially renewed under either Section 524(a) or section 524(e)(2) of MAHRA.

As acknowledged by Defendant, Plaintiff's original HAP Contract was initially renewed under Section 524(b)(1) of MAHRA. Mot. 3. Therefore, neither of these two exceptions applies to Plaintiff's HAP Contracts and HUD is required under Section 524(c)(1) to renew Plaintiff's HAP Contracts with new rents calculated by multiplying the current rents by the applicable OCAF. Accordingly, HUD's refusal to approve the renewal of Plaintiff's HAP Contracts under Option Four is not in accordance with the law.

As noted above, MAHRA provides HUD with the authority to renew project-based HAP Contracts. More specifically, MAHRA specifies two separate tracks for the

---

[6] An "Initial Renewal" is, "The first renewal of a project's contract or stage that is processed under the rules established by MAHRA …" Renewal Guide, Section 2-1A.

renewal of all project-based HAP Contracts. As discussed below, these tracks are separate and there is no basis, with one limited exception, to transfer a HAP Contract, after a contract has been placed on a renewal track in conjunction with the contract's "Initial Renewal" under MAHRA, from one track to the other.

The first renewal track is Section 515 of MAHRA, which authorizes the "Initial Renewal" of an expiring HAP Contract for an "Eligible Multifamily Housing Project." A HAP Contract renewed pursuant to the authority of Section 515 is processed in accordance with Section 514 of MAHRA and Option Three of HUD's Renewal Guide.

Section 514 (a)(1) requires "the submission of a mortgage restructuring and rental assistance sufficiency plan for each eligible multifamily housing project with an expiring contract."[7] Each restructuring results in the reduction of a project's rents to a market level. MAHRA, § 514(e)(1); Renewal Guide, Sections 5-2 A1 and 2. However, the types of projects specified in Section 514(h) of MAHRA are exempt from restructuring under Section 514 even if a project is an "Eligible Multifamily Housing Project." *See* MAHRA, § 514(h).

The second renewal track under MAHRA is for projects that are not "Eligible Multifamily Housing Projects" or that are exempt from the restructuring requirements of Section 514 under Section 514(h) of MAHRA. These projects are authorized to be renewed in accordance with Section 524 of MAHRA. Plaintiff's original HAP Contract was initially renewed under MAHRA in accordance with Section 524(b) of MAHRA. Mot. 3. Accordingly, the renewal was processed under Option Four of the Renewal Guide. *Id.*

---

[7] This plan and other requirements of Section 514 are commonly referred to as a "restructuring."

Both renewal tracks provide for how all renewals subsequent to the "Initial Renewal" of a HAP Contract under MAHRA are to be handled.  Regarding the 515 track, Section 515(b) of MAHRA states:

> After the <u>initial renewal</u> of a section 8 contract pursuant to this section, the owner shall accept each offer made pursuant to subsection (a) to renew the contract, for the term of the affordability and use restrictions required by section 514(e)(6), if the offer to renew is on terms and conditions specified in the mortgage restructuring and rental assistance sufficiency plan.  (emphasis added)

Therefore, in accordance with Section 515(b) of MAHRA, an owner, of a project that had the "Initial Renewal" of the project's HAP Contact authorized by Section 515 and processed under Section 514 of MAHRA, is required at all subsequent renewals to accept any offer made by HUD to renew its HAP Contract "if the offer to renew is on terms and conditions specified in the mortgage restructuring and rental assistance sufficiency plan."

In contrast, there is no similar requirement imposed on an owner of a project that had its "Initial Renewal" processed under Section 524 of MAHRA.  In fact, under Option Six of the Renewal Guide, any such owner may choose not to renew the owner's HAP Contract when it expires.  Rather, under Section 524(c)(1), it is HUD that must renew any expiring project-based HAP Contract that had its "Initial Renewal" processed under Section 524.

The fact that MAHRA specifies a different requirement for the subsequent renewal of the 515 track and 524 track HAP Contracts after their "Initial Renewal" under MAHRA supports the proposition that the two tracks are separate and no crossover is permitted.  This reinforces the conclusion that Plaintiff's HAP Contracts must be renewed in accordance with Section 524(c)(1) of MAHRA since Section 524(c)(1) is the

only provision of MAHRA that addresses how a project's rents are to be adjusted after the "Initial Renewal" of the project's HAP Contract under Section 524 of MAHRA.

Further reinforcing the conclusion that Plaintiff's HAP Contracts must be renewed in accordance with Section 524(c)(1) is Section 512(2) which, in relevant part, states:

> Notwithstanding any other provision of this title, the Secretary may treat a project as an eligible multifamily housing project for purposes of this title if (I) the project is assisted pursuant to a contract for project-based assistance under section 8 of the United States Housing Act of 1937 renewed under section 524 of this Act, (II) the owner consents to such treatment, and (III) the project met the requirements of the first sentence of this paragraph for eligibility as an eligible multifamily housing project before the initial renewal of the contract under section 524.

This provision permits HUD, if "the owner consents to such treatment", to have a project's subsequent renewal processed under the restructuring provisions of Section 514 of MAHRA, notwithstanding that the project had its "Initial Renewal" processed under Section 524.  This provision, which was added in 2001, is the only provision that authorizes, but only with an owner's consent, a transfer of a project from the 524 renewal track to the 515 track.  *See* Pub. L. No. 107-116, 115 Stat. 2224 (2001).

There have been no other substantive changes to MAHRA since 2001.  Therefore, if HUD already had the authority in 2001 to redetermine, at a subsequent renewal, whether a project was still eligible to have its HAP Contract renewed under Section 524, as HUD has asserted in connection with the renewal of Plaintiff's HAP Contracts, there would have been no need for Congress to amend Section 512(2) in 2001 to permit the renewal of a HAP Contract under Section 515 of MAHRA, in accordance with the restructuring provisions of Section 514 of MAHRA, when the "Initial Renewal" was processed under Section 524.   However, since HUD did not have the authority,

Congress gave HUD the authority in 2001, as long as the project's owner consents to the transfer.

Lastly, the authority for renewing expiring project-based HAP Contracts under Sections 514 and 515 is temporary; Sections 511 through 523 of MAHRA expire on October 1, 2011. *See* Pub. L. No. 110-5, Sec. 21043 (2007). The authority, however, for renewing HAP Contracts under Section 524 is permanent; there is no expiration date for Section 524.

HUD's position that it may redetermine a project's status, i.e., whether the project is still an exception project, at a renewal subsequent to the "Initial Renewal," is inconsistent with the temporary-permanent dichotomy between Sections 514/515 and Section 524. If HUD's position is correct, when the HAP Contract of an exception project expires after October 1, 2011, the date Sections 511 through 523 of MAHRA expire, HUD will determine anew whether that project is an exception project. If HUD determines that the project is no longer an exception project, as it did with Steinhorst Square, HUD will be without the authority to renew the project's HAP Contract since Section 524 will be the only authority that exists after October 1, 2011 pursuant to which HUD will be able to renew a HAP Contract. Certainly, this is not a result intended by Congress.

Clearly, the two renewal tracks specified by MAHRA are separate. There is no provision in MAHRA that permits HUD to compel a project that had its HAP Contract initially renewed under Section 524(b)(1) of MAHRA to have a subsequent renewal processed under Sections 514 and 515 of MAHRA. As stated by Rudyard Kipling, "East is East, West is West and never the twain shall meet". Similarly, there is no meeting of,

or crossover from, the 515 and 524 tracks, unless an owner requests a subsequent renewal pursuant to the language added to Section 512(2) in 2001 that the owner's project be treated as an "Eligible Multifamily Housing Project" and transferred from the 524 renewal track to the 515 track.

Accordingly, HUD's refusal to approve the renewal of Plaintiff's HAP Contracts in accordance with Section 524(c)(1) of MAHRA and Option Four of the Renewal Guide is contrary to the express provisions of MAHRA and constitutes a violation of the Administrative Procedure Act. Therefore, HUD's reliance on 24 C.F.R § 401.100(b), or any other regulation, in support of its decision refusing to approve the renewal of Plaintiff's HAP Contracts under Option Four is invalid. *See Chevron U.S.A. Inc. v. Natural Res. Defense Council,* 467 U.S. 837, 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise questions at issue, that intention is the law and must be given effect.").

IV.      **HUD'S RELIANCE ON 24 C.F.R § 401.100(b) IS ARBITRARY, CAPRICIOUS AND NOT OTHERWISE IN ACCORDANCE WITH LAW**

As stated by Defendant, "Pursuant to new regulation, HUD denied plaintiff's request to renew under Option Four…" Mot. 3. The new regulation referred to by Defendant is 24 C.F.R. § 401.100(b).

HUD's so-called new regulation is invalid because: (1) it was not adopted in accordance with the Administrative Procedure Act; (2) any reliance by Defendant on this regulation is invalid because the policy established by the regulation departs significantly from prior HUD precedent and Defendant has not provided a reasoned explanation for this departure from prior precedent; and (3) the regulation is contrary to the plain

language of MAHRA.  Therefore, Defendant's reliance on 24 § 401.100(b) to support

HUD's refusal to permit the renewal of Plaintiff's HAP Contracts under Option Four is

arbitrary, capricious and not otherwise in accordance with law.

### A.    24 CFR § 401.100(b) Was Not Promulgated In Accordance With The Administrative Procedure Act

HUD has implemented MAHRA through 24 C.F.R. Parts 401 and 402.  HUD has

also implemented MAHRA through the Renewal Guide since it was issued in 2001. Parts

401 and 402 were first promulgated through an interim rule published on September 11,

1998.  *See* 63 Fed. Reg. 48926 *et seq.* (Sept. 11, 1998).  24 C.F.R. § 401.100 was not part

of the interim rule.  *Id.*

HUD published a final rule implementing Part 401 on March 22, 2000.  *See* 65

Fed. Reg. 15452 *et seq.* (March 22, 2000).  As with the interim rule, 24 C.F.R. § 401.100

was not part of the final rule.  *Id.*

In the March 22, 2000 final rule, HUD stated that it would publish a separate final

rule "for those sections of the interim rule that govern renewal of section 8 project-based

assistance contracts for projects outside of the Mark-to-Market Program."  Id. at 15452.

Accordingly, in the March 22, 2000 final rule, HUD stated it was "separating parts 401

and 402" and that "the rest of interim part 402 continues in effect until other changes to

part 402 are published later as a separate final rule."  *Id.*  at 15453

HUD published its final rule implementing Part 402 on January 12, 2006.  *See* 71

Fed. Reg. 2111 *et seq.*  (Jan. 12, 2006).  In addition to the changes made to part 402, the

January 12, 2006 final rule also made some revisions to part 401, including adding

§ 401.100.  *Id.*

Prior to the adoption of 24 C.F.R. § 401.100(b), no printed HUD directive authorized HUD to redetermine, at a subsequent renewal, the status of a project that had its "Initial Renewal" processed under Option Four. In fact, as stated in Section 6-4A of the Renewal Guide, before it was revised on December 12, 2006, "No 'lesser of' test is required at subsequent renewal." *See* Ex. 1.[8] Rather, the owner of a project that had the "Initial Renewal" of its HAP Contract processed under Option Four, was entitled to a subsequent renewal with new rents equal to the then current rents as adjusted by an OCAF, unless the owner requested an adjustment on a budget basis. *Id.*

The APA requires that "General notice of proposed rule making shall be published in the Federal Register …" 5 U.S.C. § 553(b). After a notice is published in the Federal Register, an agency is required to "give interested persons an opportunity to participate in the rule making through submission of written data, views, arguments …" *Id.* at § 553(c).[9] These requirements of notice and comment "appl[y] to all rules except 'interpretative rules, general statements of policy, or rules of agency organization, procedure or practice.'" *Batterton v. Marshall*, 648 F.2d 694, 701 (D.C. Cir. 1980) (*quoting* 5 U.S.C. § 553(b)(3)(A)). Accordingly, advance notice and public participation are required for so-called legislative or substantive rules, i.e. rules that have substantive legal effect. *Id.* at 701-702.

"The dividing line between legislative and interpretative rules has been deemed 'fuzzy' in some cases." *Nat'l Family Planning and Reproductive Health Ass'n v. Sullivan,* 979 F.2d 227, 232 (D.C. Cir. 1992) (citations omitted). These two categories of

---

[8] The "lesser of" test refers to the adjustment of a project's Contract Rents at "Initial Renewal" to the lesser of the project's then current rents, as adjusted with an OCAF, or rents established on a budget basis. *See* Ex. 1, Section 6-2B.

[9] HUD has adopted similar notice and comment requirements. *See* 24 C.F.R. Part 10.

rules establish no general formula.  *Batterton,* 648 F.2d at 702 (citation omitted).

However, "An interpretative rule serves an advisory function explaining the meaning

given by the agency to a particular word or phrase in a statute or rule it administers."  *Id.*

at 705.  "A useful articulation of the exemption's critical feature is it covers agency

actions that do not themselves alter the rights or interests of parties, although it may alter

the manner in which the parties present themselves or their viewpoints to the agency."

*Id.* at 707.

      "Conversely, a legislative or substantive rule is one that does more than simply

clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a

consistent agency policy."  *Sullivan*, 979 F.2d at 237.  "Courts have explained that a rule

which 'effects a change in existing law **or policy'** is legislative."  *Id.* (*citing Powderly v.*

*Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983) (emphasis added).  *Cf. Sprint*

*Communications  v. FCC*, 315 F.3d 369, 374 (D.C. Cir. 2003) ("[W]hen an agency

changes the rules of the game-such that one source becomes solely responsible for what

had been a dual responsibility… more than a clarification has occurred.").  Moreover, "an

agency presumably intends a rule to be legislative if it has the rule published in the Code

of Federal Regulations; 44 U.S.C. § 1510 limits publication in that code to rules 'having

general applicability and legal effect.'"  *Am. Mining Cong. v. Mine Safety & Health*

*Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993) (*citing Brock v. Cathedral Bluffs Shale Oil*

*Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986) (Scalia, J.)).

      HUD's "new" regulation, 24 C.F.R. § 401.100(b), effected a change in policy and

changed the rules of the game for exception projects.  Before the adoption of 24 C.F.R. §

401.100(b), an exception project was entitled at all subsequent renewals of its HAP

Contract to have the project's rents adjusted by an OCAF. In other words, HUD's policy was, once an exception project, always an exception project.

Pursuant to 24 C.F.R. § 401.100(b), HUD now conclusively determines at the subsequent renewal of the HAP Contract of an exception project whether the HAP Contract must be renewed in accordance with the restructuring provisions of Section 514 of MAHRA. If HUD determines that the project must be renewed under the restructuring provisions of MAHRA, the project's rents will be reduced instead of being increased. This is a significant, substantive change in policy. Therefore, 24 C.F.R. § 401.100(b) is clearly a legislative rule that is subject to the notice and comment requirements of the APA. *Cf. Batterton*, 648 F.2d at 706 (Department of Labor methodology that conclusively determined the unemployment statistics which triggered federal emergency job program fund allocations was a legislative rule).

Since HUD did not publish 24 C.F.R. § 401.100(b) for notice and comment in the Federal Register, it must be invalidated. *See Natural Resources Def. Council v. EPA,* 489 F.3d 1250, 1261 (D.C. Cir. 2007) (regulation that conflicts with plain meaning of statute must be vacated); *see also Batterton*, 648 F.2d at 711. ("Normally, a judicial determination of procedural defect requires invalidation of the challenged rule") (citation omitted). Moreover, the regulation must also be invalidated, even if the Court determines that 24 C.F.R. § 401.100(b) is an interpretative rule. This is because, as discussed below, the regulation is contrary to MAHRA. *See Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1309 (D.C. Cir. 1991) (interpretative rule that "runs contrary to the plain meaning of the statute … must be reversed"). Accordingly, HUD's decision not to approve the renewal of Plaintiff's HAP Contracts under Option Four must be reversed since HUD's refusal to

approve the renewal of Plaintiff's HAP Contracts under Option Four is based entirely on an invalid regulation.

**B.    HUD's Reliance On 24 C.F.R. § 401.100(b) Is Arbitrary And Capricious**

"This court emphatically requires that administrative agencies adhere to their own precedents or explain any deviation from them." *Greyhound Corp. v. ICC,* 551 F. 2d, 414, 416 (D.C. Cir 1977) (citations omitted). "[W]hen an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law." *Id.* "Agency decisions that depart from established precedent without a reasoned explanation will be vacated as arbitrary and capricious." *Graphic Communications Int'l Union v. Salem-Gravure Div. of World Color Press, Inc.*, 843 F.2d 1490, 1493 (D.C. Cir. 1988).

HUD's "new" regulation, 24 C.F.R. § 401.100(b), deviates significantly from its prior practice. Instead of automatically permitting an exception project to have all renewals after the project's "Initial Renewal" processed under Option Four, HUD now redetermines a project's status that could, as with Steinhorst Square, lead to HUD prohibiting the project from having these subsequent renewals processed under Option Four. Defendant has not offered a "reasoned explanation" for this departure from HUD's prior precedent. In fact, Defendant has offered no explanation whatsoever of why HUD has chosen to change its policy. Therefore, HUD's refusal to approve the renewal of Plaintiff's HAP Contracts under Option Four is arbitrary and capricious and its decision must be reversed.

### C.     24 CFR § 401.100(b) Is Contrary to MAHRA

Defendant justifies HUD's refusal to approve the renewal of Plaintiff's HAP

Contracts under Option Four on the basis that 24 C.F.R. § 401.100(b) is consistent with

MAHRA and provides clarity to MAHRA by determining when eligibility for mortgage

restructuring occurs.  Mot. 6-7.  However, 24 C.F.R. § 401.100(b) is directly contrary to

MAHRA.  Therefore, any reliance by Defendant on 24 C.F.R. § 401.100(b) is

inappropriate.

> Section 524(c)(1) of MAHRA states,
>
> (c) Rent adjustments after renewal of contract.—
>
> (1) Required.—After the initial renewal of a contract for assistance under section 8 of the United States Housing Act of 1937 pursuant to subsection (a), (b)(1), or (e)(2), the Secretary shall annually adjust the rents using an operating cost adjustment factor established by the Secretary (which shall not result in a negative adjustment) or, upon the request of the owner and subject to approval of the Secretary, on a budget basis.  In the case of projects with contracts renewed pursuant to subsection (a) or pursuant to subsection (e)(2) at rent levels equal to comparable market rents for the market area, at the expiration of each 5-year period, the Secretary shall compare existing rents with comparable market rents for the market area and may make any adjustments in the rent necessary to maintain the contract rents at a level not greater than comparable market rents or to increase rents to comparable market rents.

42 U.S.C. § 1437f note.  As conceded by Defendant, Plaintiff renewed its original HAP

Contract under Section 524(b)(1) of MAHRA and Option Four of the Renewal Guide.

Mot. 3.  Therefore, in accordance with the plain, unambiguous language of Section

524(c)(1), HUD "shall annually adjust the rents using an operating cost adjustment

factor."

Defendant asserts that Section 524(c)(1) "deals with *annual* rent adjustments to

*ongoing* contracts, not contract renewal of expired contracts."  Mot. 7 (emphasis in

original).  However, Defendant provides no basis for, or authority in support of, this assertion.  This is because Defendant's assertion is incorrect.

For HAP Contracts renewed under Sections 524(a) or 524(e)(2), the second sentence of Section 524(c)(1) requires HUD, every five years, to compare a project's current rents with comparable market rents.  Based on this comparability study, the second sentence permits HUD to increase or decrease the project's rents to market.  Since a comparability study is required every five years, the second sentence of Section 524(c)(1) is clearly applicable to projects during the term of both an "Initial Renewal" and all renewals thereafter.  Therefore, the first sentence of Section 524(c)(1), consistent with the second sentence, can only be construed as applying to both ongoing contracts and the renewal of expired contracts.

Under the plain language of Section 524(c)(1), there is no exception to the mandate to "annually adjust the rents using an operating cost adjustment factor"; no distinction is made between annual adjustments to ongoing contracts after an "Initial Renewal" and adjustments at subsequent renewals.  Therefore, HUD's attempt to compel Plaintiff to restructure its mortgage loan and **reduce** the rents at Steinhorst Square, rather than adjusting them with an OCAF[10], is contrary to Section 524(c)(1) and "not in accordance with law."  *Cf. Chrysler Corp. v. Brown,* 441 U.S. 281, 318 (1979) (disclosure of information in violation of the Trade Secrets Act is "not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A)); *Louisville & N.R. Co. v. United States*, 268 F. Supp. 71, 75 (W.D. Ky. 1967) (holding that an administrative order that is

---

[10] As stated in Section 524(c)(1), adjusting a project's rents with an OCAF "shall not result in a negative adjustment."

based on an erroneous interpretation or misapplication of relevant statutory provisions is "not in accordance with law."), *rev'd on other grounds*, 392 U.S. 571 (1968).

## CONCLUSION

In good faith, and as a partner of the Federal Government, Plaintiff entered into its original HAP Contract with the Municipal Housing Authority of the City of Utica, New York. Pursuant to Plaintiff's original HAP Contract, Plaintiff committed to provide housing for low-income persons under HUD's Section 8 New Construction and Substantial Rehabilitation Programs for twenty years. In return, the Housing Authority provided monthly payments to Plaintiff from funds received by the Housing Authority from HUD. These payments were the difference between the rents approved by the Housing Authority in accordance with HUD guidelines and thirty percent of the adjusted gross income of each tenant family.

HUD's policy, in effect at the time of the 2001 renewal of Plaintiff's original HAP Contract, was that at the subsequent renewal of a HAP Contract that had been initially renewed under Option Four, the HAP Contract would be renewed under Option Four and the rents would be adjusted with an OCAF. In other words, once an exception project, always an exception project.

When Plaintiff's original HAP Contact expired in 2001, HUD determined that Steinhorst Square was an exception project. Based on this determination, and to continue its partnership with the Federal Government, Plaintiff chose to renew its contract, which was split into two contacts, for five years.

When Plaintiff's Renewal HAP Contracts expired in 2006, Plaintiff requested that they be renewed again under Option Four, in accordance with the policy that was in

effect when Plaintiff renewed its HAP Contract in 2001. However, HUD refused to permit the renewal of Plaintiff's HAP Contracts under Option Four since HUD determined that Steinhorst Square is no longer an exception project. HUD's decision was based on 24 C.F.R. § 401.100(b), which purports to give HUD the authority to determine whether, at the subsequent renewal of a HAP Contract that was initially renewed under Section 524 of MAHRA and Option Four as an exception project, the project still qualifies as an exception project. HUD's decision is arbitrary, capricious and not otherwise in accordance with law for several reasons.

Renewal under Sections 514 and 515 of MAHRA, the only renewal option available to Steinhorst Square if it is determined that it is no longer an exception project, is limited to an "Eligible Multifamily Housing Project." Steinhorst Square is not an "Eligible Multifamily Housing Project" because it is not covered by a HAP Contract under Section 8(b)(2) of the United States Housing Act of 1937, which was repealed in 1983. Rather, Steinhorst Square is covered by a HAP Contract under Section 524 of MAHRA. Therefore, Steinhorst Square may not have its HAP Contract restructured under Section 514 of MAHRA.

Section 524(c)(1) of MAHRA requires an annual adjustment of a project's rents with an OCAF after the project's HAP Contract is initially renewed under Section 524. This requirement applies to adjustments during the term of an "Initial Renewal" and to subsequent renewals. Although there are two exceptions to this requirement of an annual adjustment with an OCAF, one specified in Section 524(c)(1) and the other in Section 524(c)(2), neither of the two exceptions is applicable to Steinhorst Square.

There are two renewal tracks under MAHRA; one under Section 515 and the other under Section 524. The two tracks are separate and, with one limited exception, no transfer from one track to the other is permitted. Therefore, since Plaintiff's HAP Contract was initially renewed under the 524 renewal track, Plaintiff's HAP Contracts may not now be renewed under the 515 track.

In 2001, Section 512(2) of MAHRA was revised to permit a project to be treated as an "Eligible Multifamily Housing Project" at a subsequent renewal of a project's HAP Contract notwithstanding that the project's HAP Contract was initially renewed under Section 524. This would allow the transfer of a project that had its HAP Contract initially renewed under the 524 track from the 524 track to the 515 track at a subsequent renewal, if the owner consents to the transfer. There would have been no need for Congress to amend Section 512(2) to permit this if HUD already had, as Defendant asserts, the authority to redetermine a project's status at a subsequent renewal.

Sections 511 through 523 of MAHRA expire on October 1, 2011. If Defendant is correct that HUD may redetermine an exception project's status at a subsequent renewal and HUD determines after October 1, 2011 that a project is no longer an exception project, HUD will be without the authority to renew the project's HAP Contract. This is because Section 524 will be the only authority after October 1, 2011 that permits HUD to renew a project-based HAP Contract. Clearly, this is not a result intended by Congress. Therefore, 24 C.F.R. § 401.100(b) is contrary to MAHRA. 24 C.F.R. § 401.100(b) is also contrary to the requirement of Section 524(c)(1) that the rents of a project that had its HAP Contract initially renewed under Section 524 be adjusted annually.

Lastly, 24 C.F.R. § 401.100(b) violates the APA because it was adopted without notice and comment.  24 C.F.R. § 401.100(b) also violates the APA because it represents a substantive departure from HUD's prior practice of permitting an exception project to process any subsequent renewal under Option Four and Defendant has not provided a reasoned explanation for this departure.  Accordingly, the Court should grant Plaintiff's Cross-Motion for Summary Judgment.  In addition, the Court should deny Defendant's Motion for Summary Judgment.

November 7, 2007

  /s/ Carl A.S. Coan, Jr.                              
Carl A.S. Coan, Jr. (D.C. Bar No. 89466)
Carl A.S. Coan, III (D.C. Bar No. 358034)
Coan & Lyons
1100 Connecticut Ave., N.W.
Suite 1000
Washington, DC 20036
Phone No. 202-728-1070
Fax No. 202-293-2448

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEINHORST ASSOCIATES,                          )
                                                )
                          Plaintiff,            )
                                                )
        v.                                      )    Civil Action No. 07-813 (HHK)
                                                )
ALPHONSO JACKSON, in his capacity as            )
Secretary of the United States Department of    )
Housing And Urban Development,                   )
                                                )
                                                )
                                                )
                          Defendant.            )
_____ )

## DECLARATION OF GERALD SLAVET

I, Gerald Slavet, being first duly sworn, under oath, depose and state the

following:

1. I am a citizen of the United States, over the age of 21 and am competent to

testify to the matters contained herein.

2. I am a General Partner of Steinhorst Associates, the owner of Steinhorst

Square Apartments ("Steinhorst Square"), a 100-unit rental apartment project in Utica,

New York, developed for occupancy by low-income elderly families and individuals.

Steinhorst Square is managed on behalf of Steinhorst Associates by MB Management

Company.

3. Steinhorst Square was developed in two stages. The first stage was the

construction of sixty units built under HUD's Section 8 New Construction Program. The

second stage consisted of forty units rehabilitated under HUD's Section 8 Substantial

Rehabilitation Program.

4. Steinhorst Associates entered into a housing assistance payments ("HAP") contract with the Municipal Housing Authority of the City of Utica, New York under Section 8 of the United States Housing Act of 1937, covering 99 of the 100 units at Steinhorst Square. The contract was effective in two stages. Stage 1 covering 59 units was effective September 7, 1981 and Stage 2 covering 40 units was effective November 12, 1981. Stage 1 of the original HAP contract expired on September 6, 2001 and Stage 2 of the contract expired on November 11, 2001.

5. When both stages of Steinhorst Associates' original HAP contract expired in 2001, Steinhorst Associates requested that the contract be renewed under Option Four of HUD's Section 8 Renewal Guide ("Renewal Guide"). HUD approved this request because HUD determined that Steinhorst Square was an exception project.

6. Pursuant to HUD's approval of the request to renew Steinhorst Associates' original HAP contract under Option Four of the Renewal Guide, the contract was split into two contracts and a Renewal HAP Contract was executed for each stage in November 2001. The Stage 1 contract was effective September 7, 2001 and the Stage 2 contract was effective November 12, 2001. Each contract was for a term of five years.

7. Several months before Steinhorst Square's 2001 HAP contracts expired in 2006, Steinhorst Associates was informed by HUD, through MB Management Company, that HUD was no longer automatically renewing under Option Four of the Renewal Guide HAP contracts that had been initially renewed under MAHRA as exception projects. Instead, HUD was reviewing any such contract to determine anew whether the project covered by the contract qualified as an exception project.

2

8.  Steinhorst Associates, through its counsel, questioned the validity of this change in policy.  HUD confirmed this change in policy in the August 8, 2006 letter from Ted Toon, HUD's Deputy Assistant Secretary for the Office of Affordable Housing Preservation, to Steinhorst Associates' counsel.

9.  On November 30, 2006, Steinhorst Associates, through MB Management Company, requested in writing a further renewal of its HAP contracts for a term of 20 years, in accordance with Option Four of the Guide, as in effect on November 30, 2006. In January 2007, HUD denied this request and directed MB to resubmit the renewal request under another option of the Renewal Guide.

I hereby declare under penalty of perjury that the foregoing statements are based on my personal knowledge and are true.

_____ 1/26/07 _____
Date

_____
Gerald Slavet

3

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA


STEINHORST ASSOCIATES


v.


ALPHONSO JACKSON, in his capacity as
Secretary of the United States
Department of Housing and Urban Development


Civil Action No. 07-813(HHK)


PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT


EXHIBIT 1



# Option Four *Renewal of Projects Exempted from OMHAR*

## ELIGIBILITY

### Section 6-1

Certain project types are not eligible for OMHAR even though the contract rents may exceed market. Projects without FHA-insured loans are exempt, as are certain FHA-insured properties.

Specifically, the following projects are identified by the statute as "exception projects."

A. Definition. Section 524(b) of MAHRA defines "exception projects" as those that may be renewed at rents above market. Projects fitting one of the following characteristics may renew under Option Four as an "exception project."

1. State or Local Government financing. Projects for which the primary financing or mortgage insurance was provided by a unit of State government or a unit of general local government (or an agency or instrumentality of either) and is not insured under the National Housing Act.

   However, if the primary financing or mortgage insurance is provided by a State government or a unit of general local government, and the financing involves mortgage insurance under the National Housing Act, a determination must be made by OMHAR as to whether or not implementation of a Mark-to-Market Restructuring Plan is in conflict with applicable law, or agreements governing such financing. In these cases, the contract and supporting documentation of the potential conflict must be referred to OMHAR for review. The owner (or lender) must submit an opinion of counsel in a form acceptable to HUD, along with copies of the relevant financing documents or applicable local or State legal authority.

Upon receipt of the Owner's documentation, OMHAR will complete its review and notify the PM/CA of its determination generally within 5 business days.

In cases where OMHAR determines that the contract is eligible for debt restructuring, the PM/CA will notify the owner that a RCS is required. If the RCS demonstrates that the rents are above market, the project will be renewed for six months using the  Contract for Entry Into OMHAR and OMHAR will process the renewal.

*Note:  In cases where referral to OMHAR is necessary, CAs must return the contract to the PM with the recommendation that the PM forward the contract to OMHAR for review.*

In cases where OMHAR determines that the Restructuring Plan would be in conflict with applicable laws and/or agreements, OMHAR will return the case to the Project Manager or Contract Administrator for a renewal under the Option Four provisions.

2. Section 202/8 and 515/8 Projects.  Projects currently financed under Section 202 of the Housing Act of 1959 or Section 515 of the Housing Act of 1949.  However, these projects can be eligible for restructuring if refinanced with FHA mortgage insurance.  Section 202 and 811 Capital Advance projects are not eligible because they do not have Section 8 contracts.

3. SRO Mod Rehab.  Projects that have an expiring contract under Section 8 of the United States Housing Act of 1937 pursuant to Section 441 of the Stewart B. McKinney Homeless Assistance Act.

4. Section 512 (2) of MAHRA.  Projects that do not qualify as eligible multifamily housing projects pursuant to Section 512(2) of MAHRA include:

   a.  a project that is not subject to a HUD-held or insured mortgage; or,

   b.  a project that has FHA mortgage insurance or is HUD-held with rents at or below comparable market rents.

   *For an Owner of an FHA-insured or HUD-held project to claim eligibility under 4b, they must obtain a RCS.*

## INITIAL AND SUBSEQUENT RENEWALS

Section 6-2

A. Owner submission. At least 120 days before contract expiration, the owner submits:

1. **Contract Renewal Request Form and OCAF Worksheet.** The Renewal Worksheet documents the owner's option selection and the OCAF-adjusted rent potential.

2. **Budget.** A Budget and rent schedule must be completed in accordance with the requirements of HUD Handbook 4350.1, Chapter 7, or the RHS approved budget, and Attachment 5.

3. **RCS.** For an FHA-insured or HUD-held project that is requesting renewal (as described in Section A.4. above), a RCS must demonstrate that the project's current rents are at or below comparable market rents.

4. If the primary financing or mortgage insurance is provided by a State government or a unit of general local government, and the financing involves mortgage insurance under the National Housing Act:

   1. Copies of the original financing documents and,
   2. The under lying statutory authority which the Owner believes conflicts with a mark-to-market restructuring plan, and,
   3. Counsel's opinion as to the conflict

B. Rent Determination. Based on the documentation submitted by the owner, the initial renewal rents shall be set at the lesser of:

1. **Current Rents + OCAF.** The current rent potential of the expiring Section 8 contract(s) adjusted by the published OCAF; or

2. **Budget.** The rent level required to meet operating expenses based on the format required by HUD Handbook 4350.1, Chapter 7 and Attachment 5, and submitted with the request for renewal.

   a. If the project had a budget approved by HUD less than one year before processing the initial renewal, a copy of that budget may be submitted in lieu of a new budget, unless the Owner refinanced the project.

   b. The "lesser of" test is conducted only once, at the contract's initial renewal under section 524 of MAHRA. Once the contract undergoes the "lesser of" test, it does not have to repeat the test again at subsequent renewal or at any rent adjustments during a multi year contract.

## RENT ADJUSTMENTS FOR MULTI-YEAR CONTRACTS

Section 6-3

For multi year contracts, at least 120 days before the anniversary date of the contract, the owner should submit:

1. OCAF Worksheet, Attachment 3; or

2. A budget-based rent increase request. If requesting a budget based rent adjustment, the rent level required to meet operating expenses based on the format required by HUD Handbook 4350.1, Chapter 7 and Attachment 5, must be submitted with the request.

## SUBSEQUENT RENEWALS

### Section 6-4

A. No "lesser of" test is required at subsequent renewal. An owner can receive either an OCAF adjustment or a budget based adjustment to the rent.

B. Owner Submission. At least 120 days before expiration of the Section 8 contract, the owner should submit:

1. The Contract Renewal Request Form and OCAF Worksheet.

2. If the Owner requests a budget-based rent increase, a budget prepared in accordance with HUD Handbook 4350.1, Chapter 7.

## PROCESSING INSTRUCTIONS

### Section 6-5

A. <u>PM/CA Review</u>. The PM should complete his/her review within 45 calendar days or whatever period is required to allow sufficient time for processing the contract renewal.

B. The PM/CA checks to see:

1. That the owner requested to renew under Option Four, *Renewal of Contract for Projects Exempted From OMHAR;*

2. If the Owner is eligible to renew the section 8 project-based contract under Option Four;

3. That the Owner submitted all the required documentation. For example:

   a. Contract Renewal Request Form and OCAF Worksheet;

      b.  A Rent Comparability Study, if applicable, prepared in accordance with Chapter Nine of this Guide;

      c.  A budget-based rent adjustment, prepared in accordance with Chapter Seven of HUD Handbook 4350.1.

    4.  If the Owner specified on the Cover Sheet of the Contract Renewal Request Form whether they wanted any multiple stages or contracts combined at this time. See instructions provided in Chapter Two of this Guide.

C.  Review the Owner's certification regarding suspension or debarment on the worksheet. If the Owner checked that they are not suspended or debarred, verify that information by using the www.ARNet.gov/epls/.

D.  If it is determined that the Owner is suspended or debarred, HUD will permit the Owner to renew the Section 8 contract if the project(s) in question are adequately managed and maintained, and activities there were not the cause of the administrative actions against the Owner.

E.  Log the owner's request as indicated on Contract Renewal Request Form and any other relevant information in the REMS system.

F.  Prepare a 524(b) contract renewal.

    1.  Initial renewals shall be at the lesser of the current rents adjusted by OCAF or the budget-based rent level.

    2.  Rent Adjustments during term of multi year contracts shall be by:

      a.  Application of OCAF, or

      b.  Application of budget-based method.

    3.  At subsequent renewals, apply the appropriate rent adjustment method:

      a.  OCAF; or

      b.  budget-based and;

      c.  Apply the appropriate term for the contract.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEINHORST ASSOCIATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-813 (HHK) |
| | ) | |
| ALPHONSO JACKSON, in his capacity as | ) | |
| Secretary of the United States Department of | ) | |
| Housing And Urban Development, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In accordance with LCvR7(h), and in support of its motion for summary judgment, Plaintiff submits this statement of material facts as to which Plaintiff contends there is no genuine issue.

1. Plaintiff is the owner of Steinhorst Square Apartments ("Steinhorst Square"), a 100-unit multifamily rental housing project located in Utica, New York that is managed by MB Management Company.  Declaration of Gerald Slavet ("Slavet Dec.") ¶ 2.

2. Ninety-nine of the units at Steinhorst Square are covered by a project-based Section 8 Housing Assistance Payments ("HAP") Contract between Plaintiff and the Municipal Housing Authority of the City of Utica, New York ("Housing Authority"). *Id.* ¶ 4.  The Housing Authority provides rental assistance, with funds received from HUD, under HUD's Section 8 Program on behalf of the low-income persons who live in the units covered by the Contract.

3.   There were two stages to the original HAP Contract between Plaintiff and the Housing Authority.  *Id.*  Stage 1 of the contract was effective September 7, 1981 and expired on September 6, 2001.  *Id.*  Stage 2 was effective November 12, 1981 and expired on November 11, 2001.  *Id.*

4.   When the two stages of Plaintiff's original HAP Contract expired in 2001, each stage was renewed as a separate contract for five years under Option Four of HUD's Section 8 Renewal Guide ("Renewal Guide").  *Id.* ¶¶ 5-6.  The Stage 1 Contract was effective September 7, 2001 and the Stage 2 Contract was effective November 12, 2001, the respective anniversary dates of the two stages.  *Id. ¶* 6.

5.   Under Option Four of the Renewal Guide, at the first renewal of a project-based Section 8 HAP Contract pursuant to the provisions of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA"), the rents payable under the renewal contract are set at the lesser of the rents in effect at the time the HAP Contract expires, as adjusted by an operating cost adjustment factor ("OCAF"), or rents established on a budget basis.  Renewal Guide, Section 6-2B.

6.   Option Four is available to an "exception project".  *Id.*, Section 6-1.  An "exception project" is a project that is not an "Eligible Multifamily Project" as defined in Section 512(2) of MAHRA or that is exempt under Section 514(h) of MAHRA from the restructuring provisions of Section 514 of MAHRA.  *Id.*; MAHRA, §514(h).

7.   Steinhorst Square Apartments was an "exception project" in 2001 when Plaintiff's original HAP Contract expired.  Slavet Dec. ¶ 5.

8.   Before February 13, 2006 , the effective date of 24 C.F.R. § 401.100(b), upon the expiration of a project-based Section 8 HAP Contract that had previously been

renewed under Option Four of the Renewal Guide, an owner was entitled to renew the contract under Option Four. Renewal Guide, Section 6-4 (as in effect before December 12, 2006).[1]

9. Beginning February 13, 2006, the effective date of 24 C.F.R. § 401.100(b), upon the expiration of a project-based Section 8 HAP Contract that had previously been renewed under Option Four, HUD stopped automatically renewing such contracts under Option Four. Instead, HUD began reviewing such contracts to determine whether a project still qualified, in HUD's opinion, as an exception project. 24 C.F.R. § 401.100(b).

10. HUD informed Plaintiff, through MB Management Company, of this change in policy several months before the Steinhorst Square Stage 1 and Stage 2 Renewal HAP Contracts expired in September and November 2006, respectively. Slavet Dec. ¶ 7.

11. HUD confirmed this change in policy in the August 8, 2006 letter from Ted Toon, HUD's Deputy Assistant Secretary for the Office of Affordable Housing Preservation, to Plaintiff's counsel. *Id.* ¶ 8.

12. On November 30, 2006, MB Management Company, on behalf of Plaintiff, requested that HUD renew for a term of twenty years, retroactive to their respective expiration dates of September 7 and November 12, 2006, Plaintiff's Stage 1 and Stage 2 Renewal HAP Contracts under Option Four, as in effect at that time. *Id.* ¶ 9. HUD denied this request on January 17, 2007 and directed MB to resubmit its renewal request under another option of the Renewal Guide. *Id.*

---

[1] A copy of chapter six of the Renewal Guide that was in effect before HUD revised the Guide on December 12, 2006 is attached as Exhibit 1 to Plaintiff's Cross-Motion for Summary Judgment.

13.   Before December 12, 2006, the owner of an exception project was entitled under Option Four of the Renewal Guide, at the subsequent renewal of a HAP Contract that had previously been renewed under Option Four, to have the rents specified in the renewal Contract established by adjusting the project's current rents with an operating cost adjustment factor ("OCAF"), unless the owner requested that the rents be adjusted on a budget basis and HUD approved the request.  Renewal Guide, Section 6-4A (as in effect before December 12, 2006).

14.   On December 12, 2006, HUD revised Option Four of the Renewal Guide to require that the rents established by all renewals of a HAP Contract, not just the initial renewal of a HAP Contract under Option Four, be based on the lesser of a project's current rents, as adjusted by OCAF, or rents determined on a budget basis.  Renewal Guide, Section 6-4A (as in effect since December 12, 2006).  *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Ex. 3.  This revision was effective April 19, 2007 and does not apply to a renewal request filed on or before April 19, 2007, as long as the request was not filed more than 120 days before a HAP Contract's anniversary date. *Id.*, Ex. 4.

Respectfully submitted,


November 7, 2007                           /s/ Carl A.S. Coan, Jr.
                                          Carl A.S. Coan, Jr. (D.C. Bar No. 89466)
                                          Carl A.S. Coan, III (D.C. Bar No. 358034)
                                          Coan & Lyons
                                          1100 Connecticut Avenue, N.W.
                                          Suite 1000
                                          Washington, DC 20036
                                          Phone No. 202-728-1070
                                          Fax No. 202-293-2448

                                          Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEINHORST ASSOCIATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-813 (HHK) |
| | ) |
| ALPHONSO JACKSON, in his capacity as | ) |
| Secretary of the United States Department of | ) |
| Housing And Urban Development, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **ORDER**

Upon consideration of Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment, the oppositions and replies thereto, and the record herein, it is this _____ day of _____, 2007, hereby

ORDERED that Defendant's motion for summary judgment is denied; and it is

FURTHER ORDERED that Plaintiff's cross-motion for summary judgment is granted; and it is

DECLARED that HUD's refusal to approve the renewal of the Housing Assistance Payments Contacts between Plaintiff and the Municipal Housing Authority of the City of Utica, New York under Option Four of HUD's Section 8 Renewal Guide is arbitrary, capricious and not otherwise in accordance with law; and it is

FURTHER DECLARED that Steinhorst Square Apartments is, and will always be, an "exception project"; and it is

FURTHER DECLARED that Plaintiff is entitled to renew its HAP Contracts

under Option Four of HUD's Section 8 Renewal Guide, as in effect before December 12,

2006; and it is

FURTHER ORDERED that HUD shall approve the renewal of Plaintiff's HAP

Contracts under Option Four, as in effect before December 12, 2006, retroactive to

October 1, 2007; and it is

FURTHER ORDERED that the case is remanded to HUD for action in accord

with this Order.

_____
HENRY H. KENNEDY, Jr.
United States District Judge