UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEINHORST ASSOCIATES,**<br><br>               **Plaintiff,**<br><br>        **v.**<br><br>**STEVE PRESTON, in his capacity as Secretary of the United States Department of Housing and Urban Development,**<br><br>             **Defendant.** | **Civil Action 07-00813  (HHK)** |

## MEMORANDUM OPINION

Steinhorst Associates ("Steinhorst") brings this action against Steve Preston,[1] in his capacity as Secretary of the United States Department of Housing and Urban Development ("HUD"), under the Administrative Procedures Act, 5 U.S.C. 701 *et seq.*, seeking declaratory and injunctive relief.  Before the court are Steinhorst's and HUD's motions for summary judgment [##15 and 21].  Upon consideration of the motions, the oppositions thereto, and the summary-judgment record, the court concludes that Steinhorst's motion should be granted in part and HUD's motion should be denied.

## BACKGROUND

### A.     Regulatory Background

Steinhorst's complaint implicates two HUD programs: Section 8 rental assistance, 42 U.S.C. § 1437f (2000) ("Section 8"), and the Multifamily Assisted Housing Reform and

---

[1]  In the time since Steinhorst filed its complaint, Steve Preston has succeeded Alphonso Jackson as Secretary, and is substituted as a party pursuant to Fed. R. Civ. P. 25(d)(1).

Affordability Act ("MAHRA"), 42 U.S.C. § 1437f note (2000). Congress enacted the Section 8

program in 1974 to "'aid[] low-income families in obtaining a decent place to live,' § 1437f(a),

by subsidizing private landlords who would rent to low-income tenants." *Cisneros v. Alpine*

*Ridge Group*, 508 U.S. 10, 12 (1993). Section 8 provides federal subsidies to private building

owners who rent to low-income families. § 1437f(b). These building owners and HUD enter

into Housing Assistance Payments ("HAP") Contracts, which establish the maximum monthly

rent that an owner of a multifamily rental housing project is entitled to receive for each unit

covered by the contract. § 1437f(c). A low-income tenant pays thirty percent of his adjusted

gross income towards rent, § 1437a(1), while HUD pays the owner the difference between the

HAP Contract rent and the amount the tenant is required to pay, § 1437f(c)(3).

In 1997, Congress enacted the Multifamily Assisted Housing Reform Act ("MAHRA"),

which established new policies for the renewal of all Section 8 HAP contracts. § 1437f note.

Upon expiration of a HAP contract, if the building owner's rent is above-market, MAHRA's

provisions generally reduce the rent to market levels. *Id.* Requiring building owners to

restructure their debt by refinancing their mortgages is one means by which MAHRA reduces

rents. If a building owner has an impediment[2] to restructuring the debt on a Section 8 contract

property, however, the property may qualify as an "exception project."[3] MAHRA § 524(b).

---

[2] An example of an impediment to restructuring is a prepayment lockout provision, which would prohibit prepayment of the mortgage. Def.'s Mot. for Summ. J. Ex. 1 (Decl. of Toon, ¶ 5).

[3] Section 524(b) of MAHRA defines an "exception project" as "a multifamily housing project that– "(A) is not an eligible multifamily housing project under section 512(2) [of MAHRA]; or (B) is exempt from mortgage restructuring under this subtitle pursuant to section 514(h)."

Under Option Four of HUD's Section 8 Renewal Guide and MAHRA § 524(b)(1), an exception project may renew its HAP Contract with new rents at the lesser of the rents in effect when the HAP Contract expires, as adjusted by an operating cost adjustment factor ("OCAF"), or rents established on a budget basis. *Id.*

On February 13, 2006, 24 C.F.R. § 401.100, titled "Which projects are eligible for a Restructuring Plan under this part?" became effective. Section 401.100(a) addresses the question "What are the requirements for eligibility?" and § 401.100 (b) addresses "When is eligibility determined?" Specifically, § 401.100(b) provides that

> Eligibility for a Restructuring Plan under paragraph (a) of this section is determined by the status of a project on the earlier of the termination or expiration date of the project-based assistance contract, which includes a contract renewed under section 524 of MAHRA, or the date of the owner's request to HUD for a Restructuring Plan.

§ 401.100(b). In other words, when a building owner's HAP contract expires, HUD will determine whether the owner is eligible to refinance its mortgage before renewing the owner's HAP contract. If a project owner faces an impediment to restructuring at renewal, the owner qualifies as an exception project under Option Four, and the new HAP contract would allow it to charge above-market rents. If a project owner is not exempt from restructuring, the new HAP contract will establish a rent at market levels.

Before the promulgation of § 401.100, upon the expiration of a Section 8 HAP Contract that was previously renewed under Option Four, the owner was entitled to renew its HAP Contract under Option Four. Pl.'s Mot. for Summ. J. Ex. 4 (Plaintiff's Statement of Material Facts Not in Dispute ¶ 13)[4]. Since § 401.100 was promulgated, however, when HAP contracts

---

[4] Because HUD did not submit a response to Steinhorst's Statement of Material Facts Not in Dispute, the court deems these facts admitted. LCvR 7(h).

renewed under Option Four expire, HUD no longer automatically renews the contract under

Option Four, but instead reviews the project to determine if it still qualifies as an exception

project. § 401.100(b).

### B.    Factual Background

Steinhorst is the owner of Steinhorst Square Apartments, a 100-unit multifamily rental

housing project located in Utica, New York that is managed by MB Management Company.

Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 7 (Pl.'s Response to Def.'s Statement of Material

Facts Not in Genuine Dispute ¶ 1).  Ninety-nine of Steinhorst Square's units are covered by a

project-based Section 8 HAP Contract.  Id. ¶ 2.  Steinhorst's HAP contract was executed in two

stages, effective September 7, 1981 and November 11, 1981, respectively.  Pl.'s Statement of

Material Facts Not in Dispute ¶ 3.

In 2001, pursuant to § 524(b)(1) of MAHRA and Option Four of HUD's Section 8

Renewal Guide – Renewal of Projects Exempted from the Office of Multifamily Housing

Assistance Restructuring (OMHAR), Steinhorst renewed its original twenty-year HAP contract

for five years.  Def's Mot. for Summ. J., Statement of Material Facts Not in Genuine Dispute ¶ 1.

HUD determined that Steinhorst was an exception project under MAHRA § 514(b),[5] because it

---

[5] Section 514(h) of MAHRA is titled "Exemptions from restructuring" and provides that

The following categories of projects shall not be covered by a mortgage
restructuring and rental assistance sufficiency plan if--

(1) the primary financing or mortgage insurance for the multifamily housing
project that is covered by that expiring contract was provided by a unit of State
government or a unit of general local government (or an agency or instrumentality
of a unit of a State government or unit of general local government) and the
financing involves mortgage insurance under the National Housing Act [12
U.S.C.A. § 1701 *et seq*.], such that the implementation of a mortgage restructuring

had an impediment for restructuring its debt.  *Id.*  Specifically, HUD found that because

Steinhorst's financing was provided by a instrumentality of a local unit of government, Steinhorst

had a prohibition on prepaying the mortgage loan before April 15, 2006.  Pl.'s Opp'n to Def.'s

Mot. for Summ. J. Ex.1 (Decl. of Slavet at ¶ 7).  Accordingly, Steinhorst qualified as an

exception project under Option Four.  Pl.'s Statement of Material Facts Not In Dispute ¶ 7.  A

renewal HAP contract for each stage was executed in November 2001, with the contract for one

stage effective on September 7, 2001, and the other effective November 12, 2001.  *Id.*  Each

contract was for a five-year term.  *Id.*

Shortly before these HAP contracts expired in 2006, HUD informed Steinhorst's

management company, MB Management Company, that Steinhorst "would not automatically be

considered an exception project" when the contracts were up for renewal.  Pl.'s Statement of

Material Facts Not In Dispute ¶ 10.  Instead, HUD would determine at the time it renewed the

HAP contracts whether Steinhorst was still exempt from the restructuring requirements of

MAHRA § 514.  HUD reiterated its position in a August 8, 2006, letter from Theodore Toon,

---

and rental assistance sufficiency plan under this subtitle is in conflict with
applicable law or agreements governing such financing;

(2) the project is a project financed under section 202 of the Housing Act of 1959
section 1701q of Title 12] or section 515 of the Housing Act of 1949 [section
1485 of this title], or refinanced pursuant to section 811 of the American
Homeownership and Economic Opportunity Act of 2000 (12 U.S.C. 1701q note);
or

(3) the project has an expiring contract under section 8 of the United States
Housing Act of 1937 [this section] entered into pursuant to section 441 of the
McKinney-Vento Homeless Assistance Act [section 11401 of this title].

42 U.S.C. § 1437f.

HUD's Deputy Assistant Secretary of the Office of Affordable Housing Preservation, to Carl

Coan, Steinhorst's counsel.  Pl's Opp. to Def.'s Mot. for Summ. J. Ex. 5 (Toon Ltr. to Coan,

August 8, 2006).  Toon's letter explained that "[c]onsistent with the new Regulations [24 C.F.R.

§ 401.100] and [Office of Affordable Housing Preservation] Policy, Steinhorst Apartments'

eligibility will be determined at the expiration of the current contract without reference or

consideration give to any prior determination of exemption under Section 514(h) at the

expiration of a previous contract."  *Id.*  Toon's letter also quotes from the Preamble to the

regulation, published in the Federal Register:

> The rule now provides that once a project has been renewed under section 524 of
> MAHRA, it will be renewed at the owner's request under any renewal option for which
> the project is eligible, <u>except that if it is eligible for a restructuring plan under Section
> 401.100, HUD or [a Participating Administrative Entity] will determine whether a
> renewal with or without a restructuring plan is necessary</u>.

*Id.* (*quoting* 71 Fed. Reg. 2112-01) (emphasis added by Toon).

On November 30, 2006, Steinhorst's management company requested HUD renew its

HAP contracts under Option Four, retroactive to each stages' expiration dates.  Decl. of Slavet

¶ 9.  Pursuant to 24 C.F.R. § 401.100, HUD determined that Steinhorst was eligible for mortgage

restructuring and therefore denied its request for HAP contract renewal under Option Four.

Def's Mot. for Summ. J., Statement of Material Facts Not in Genuine Dispute ¶ 3.  HUD denied

the request for renewal under Option Four on January 17, 2007, and directed the management

company to resubmit its renewal request under another option of the Renewal Guide.  Pl.'s

Statement of Material Facts Not In Dispute ¶ 12; *see also* Pl's Opp'n to Def.'s Mot. Summ. J.

Ex. 6 (Seweryniak Ltr. to Baptista, Jan. 17, 2007).

Steinhorst does not dispute that the lockout provision that made it an exception project in 2001 had already expired when it sought renewal under Option Four in 2006.  Pl.'s Reply in Support of Mot. Summ. J. at 5.  Steinhorst states, however, that it has an impediment to restructuring its debt because "Plaintiff will incur a penalty if its mortgage loan is prepaid before April 15, 2008, which would probably be required in connection with a restructuring."  Pl's Response to Def.'s Statement of Material Facts Not In Genuine Dispute ¶ 3.

On May 3, 2007, Steinhorst brought this suit for injunctive relief seeking an order that would compel HUD to approve the renewal of its HAP Contract under Option Four of HUD's Section 8 Renewal Guide.  Steinhorst also seeks this court's declaration that Steinhorst is entitled to renew its HAP contracts under Option Four and that Steinhorst "is, and always will be, an exception project."  Compl., Prayer for Relief (iii).

## ANALYSIS

HUD moves for summary judgment on the grounds that its actions in refusing to renew Steinhorst's HAP contracts under Option Four were neither arbitrary nor capricious because it appropriately concluded Steinhorst was eligible for restructuring under 24 C.F.R. § 410.100(b); 24 C.F.R. § 410.100(b) is a valid, interpretative rule consistent with MAHRA; and HUD's interpretation of MAHRA is entitled to deference.  For its part, Steinhorst asserts that the rule must be invalidated because HUD failed to follow notice-and-comment procedures and the regulation is contrary to MAHRA.  Consequently, HUD's refusal to approve the renewal of Steinhorst's HAP Contracts under Option Four must be reversed because HUD's decision was based entirely on an invalid regulation.  The court agrees with Steinhorst that § 410.100(b) is legislative and therefore invalid because HUD did not follow notice-and-comment procedures in contravention of the APA.

7

Section 553 of the APA requires federal agencies[6] to follow a notice-and-comment procedure before announcing final rules. *See* 5 U.S.C. § 553. The notice-and-comment procedure consists of publishing "[g]eneral notice of proposed rule making" in the Federal Register § 553(b) and "giv[ing] interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." § 553(c). The section specifically exempts "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" from these rulemaking requirements. § 553(a)(3)(A). HUD contends that it was not required to follow formal notice-and-comment procedures because 24 C.F.R. § 410.100(b) is an interpretative rule, not a legislative rule subject to notice-and-comment procedures.

The D.C. Circuit has recognized that distinguishing legislative rules from interpretative rules is a difficult task. *See Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93 (D.C. Cir. 1997) (recognizing the difficulty in telling a substantive rule from an interpretative one).[7] When making this determination, a court must narrowly construe any exceptions to the notice requirement, *Committee for Fairness*, 791 F. Supp. at 893 (*citing American Hospital Ass'n*, 834 F.2d at 1044), because the requirement does not impose "arbitrary hoops through which federal

---

[6] HUD is subject to the rulemaking requirements of the Administrative Procedure Act (APA). *Committee for Fairness v. Kemp*, 791 F. Supp. 888, 893 (D.D.C. 1992) (*citing* 24 C.F.R. Part 10; *Humana of S.C., Inc. v. Califano*, 590 F.2d 1070, 1084 (D.C. Cir. 1978); *Rodway v. U.S. Dep't of Agriculture*, 514 F.2d 809, 814 (D.C. Cir. 1975)).

[7] *See also Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579, 587 (D.C. Cir. 1997) (same); *American Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108-09 (D.C. Cir. 1993); *American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987) (describing the distinction between the two types of rules as a "hazy continuum"); *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) ("the distinction between legislative and nonlegislative rules has been described as 'enshrouded in considerable smog.'"). (*quoting American Bus Association v. ICC*, 627 F.2d 525, 529 (D.C. Cir. 1980)).

agencies must jump without reason." *Sprint Corp. v. FCC*, 315 F.3d 369, 373 (D.C. Cir. 2003). "Rather, the notice requirement improves the quality of agency rulemaking by exposing regulations to diverse public comment, ensures fairness to affected parties, and provides a well-developed record that enhances the quality of judicial review." *Id.* (*quoting Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983)) (internal quotations omitted). Allowing "an agency to make a fundamental change in its interpretation of a substantive regulation without notice and comment obviously would undermine" APA rulemaking requirements. *Paralyzed Veterans*, 117 F.3d at 586. Accordingly, the D.C. Circuit "does not defer to the agency's view that its regulations are a mere 'clarification of an existing rule' pursuant to the APA; instead, the court conducts its own inquiry into whether the new rules 'work substantive changes in prior regulations.'" *Stuttering Found. of America v. Springer*, 498 F. Supp. 2d 208, 211 (D.C. Cir. 2007) (*quoting Sprint Corp*, 315 F.3d at 374).[8]

The Supreme Court has repeatedly defined interpretative rules as those "issued by an agency to advise the public of the agency's construction of the statutes and the rules which it administers." *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979)). If the rule merely restates duties or reminds parties of those already contained in existing regulations, rather than spelling out new obligations, it may be considered interpretative and not subject to the requirements of APA § 553. *Ruckelshaus*, 742 F.2d at 1565.

---

[8] *See also, e.g., Chamber of Commerce v Occupational Safety & Health Admin.*, 636 F2d 464, 468 (D.C. Cir. 1980) ("[W]e do not classify a rule as interpretive just because the agency says it is. Instead, it is the substance of what the agency has purported to do and has done which is decisive.") (internal quotations and alterations omitted).

On the other hand, a legislative rule "'does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy.'" *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 539 F. Supp. 2d 281, 308 (D.D.C. 2008) *(citing Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 238 (D.C. Cir. 1992); *Chrysler Corp.*, 441 U.S. at 302). A legislative rule is one that "'grant[s] rights, impose[s] obligations, or produce[s] other significant effects on private interests.'" *Id.*. "Agency actions [that] establish new methods for determining the obligations of the regulated parties and the distribution of funds are subject to notice and comment rulemaking." *Committee for Fairness*, 791 F. Supp. at 895 *(citing Batterton v. Marshall*, 648 F.2d 694, 706 (D.C. Cir. 1980); *Cabais v. Egger*, 690 F.2d 234, 238 (D.C. Cir. 1982); *Nat'l Senior Citizens Law Ctr., Inc. v. Legal Services Corp.*, 581 F. Supp. 1362, 1369 (D.D.C. 1984)).

In *American Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108 (D.C. Cir. 1993), the D.C. Circuit set forth a test comprised of four criteria for determining whether a rule is legislative or interpretative. If any one criterion is met, the agency action is a legislative rule subject to the notice-and-comment procedures. The test asks,

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.

*Id.*[9]

---

[9] The court will address only the first three *American Mining Congress* factors. The fourth factor — whether the rule effectively amends a prior legislative rule — is inapplicable in this case because Steinhorst argues § 401.100(b) effectively amends MAHRA, not a prior rule.

10

HUD argues that § 401.100(b) is an interpretative rule not subject to notice-and-comment procedures because it "simply clarifies and explains MAHRA regulatory terms, confirms a regulatory requirement, and maintains a consistent agency policy." Def.'s Reply to Pl.'s Mot. Summ. J. at 4. The court disagrees.

**I.      In the Absence of § 401.100(b), There Would Not Be an Adequate Legislative Basis for HUD to Require Building Owners to Meet Eligibility Requirements at HAP Contract Renewal**

The first question — whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties — "is another way of asking whether the disputed rule really adds content to the governing legal norms." *Syncor Intern. Corp.*, 127 F.3d at 96. The court finds that § 401.100(b) does add content, and as a result, it meets the first *American Mining Congress* factor.

**A.      Section 401.100(b) Imposes New Obligations and Does Not Merely Construe MAHRA Nor Remind Building Owners of Existing Duties**

Section 401.100(b) does not merely interpret MAHRA or remind building owners of duties MAHRA already imposes. *Compare General Motors Corp. v. Ruckelshaus*, 742 F.2d at 1565 (explaining that an interpretative rule "states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties."). As HUD concedes, before § 401.100 was passed, MAHRA did not contemplate a review for eligibility at each contract renewal. Absent § 401.100(b), Steinhorst would not face eligibility requirements at the renewal of its HAP contracts and be required to restructure as a result:

The regulation addresses the odd scenario (such as the Plaintiff's scenario) where a housing project was unable to restructure its loan at the time of the initial renewal of its contract, and thus qualified for an exemption, but is able to restructure at the time of the second contract renewal. *Without this regulation, a housing project could ironically avoid the restructuring requirements of MAHRA indefinitely and continue to charge rents above market value.*

Def.'s Reply in Support of its Mot. Summ. J. at 5 (emphasis added); Def's Opp'n to Pl.'s Mot. Summ. J. at 11 (same). Steinhorst again would have qualified as an exception project, been entitled to renewal under Option Four, and its rents would have been adjusted upwards. Under § 401.100(b), however, Steinhorst is now required to restructure and may not charge rents above-market value. In other words, if HUD had not promulgated § 401.100(b), Steinhorst would always be an exception project because it was once an exception project. The new regulation cannot be interpretative if the regulatory framework it purports to interpret would yield the opposite result. *Committee for Fairness*, 791 F. Supp. 888 (finding that rules instituting programs were not interpretative because the existing regulations did not contemplate the outcome under the new regulation).

In *Chamber of Commerce v Occupational Safety & Health Administration*, the issue presented was whether an OSHA regulation that declared per se discriminatory an employer's failure to provide "walkaround pay" was interpretative or legislative. 636 F.2d at 465. The Circuit found that OSHA could not be explaining or clarifying the Occupational Safety and Health Act of 1970, because that Act "neither prohibits nor compels pay for walkaround time." 636 F.2d at 469. Thus, the Act contained no "'existing duty' to serve as the subject of an Administration reminder." OSHA argued that the regulation was essential because "'the failure [of an employer] to pay for [an employee's] walkaround is inherently destructive . . . of the entire

12

enforcement scheme of the Act.'" *Id.* (quoting 42 Fed. Reg. 47344, 47345 (1977)). Nevertheless, the court held that by promulgating the regulation to implement this policy decision Congress omitted, OSHA "attempted through this regulation to supplement the Act, not simply to construe it, and therefore the regulation must be treated as a legislative rule." *Id*.

Similarly, by promulgating § 401.100(b), HUD attempted to supplement MAHRA, not merely construe it. HUD admits that "MAHRA is silent on how subsequent HAP contract renewals are completed" and that HUD promulgated the regulation at issue, 24 C.F.R. § 401.100(b) "[b]ecause MAHRA does not specifically address when such eligibility [for renewal options] is to be determined." Def.'s Opp'n to Pl.'s Motion for Summ. J. at 5; *see also* D's Mot. Summ. J. at 5 ("the regulation is not only consistent with MAHRA, but in fact provides clarity to MAHRA by *determining* when eligibility for the necessary mortgage restructuring occurs.") (emphasis added).

Thus, it cannot be said that § 401.100(b) does nothing more than "remind" project owners of their duty to meet eligibility requirements upon each contract renewal when MAHRA contains no obligation for owners to qualify as exception projects at each renewal, and HUD concedes that owners did not have to meet these eligibility requirements at renewal before the regulation's promulgation. Section 401.100(b), therefore, is not merely a clarification of when eligibility is determined under MAHRA; it imposes an obligation on an owner at the expiration of its HAP contract that was not previously part of MAHRA. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 38 (D.C. Cir. 2005) ("[T]his is not a case in which an interpretative rule merely 'supplies crisper and more detailed lines than the authority being interpreted,' *American Mining Cong.*, 995 F.2d at 1112, or simply provides 'a clarification of an existing rule,' *Sprint Corp.*, 315 F.3d at 374.

13

Rather, it is one in which the rule at issue substantively changes a preexisting legislative rule. Such a rule is a legislative rule, and it can be valid only if it satisfies the notice-and-comment requirements of the APA."); *Committee for Fairness*, 791 F. Supp. at 893–894 (finding that rules instituting programs were legislative because they affected "major changes," "imposed new and mandatory obligations . . .in place of the discretion that had previously been accorded to them" and were not interpretative because the existing regulations did not contemplate the outcome under the new regulation.").[10]

HUD maintains that requiring owners to meet eligibility requirements is desirable because it supports MAHRA's goals of reducing the long-term costs of project-based assistance and ensuring the continued viability of multifamily rental housing projects.[11] However, like OSHA in *Chamber of Commerce*, HUD's attempt to supplement MAHRA, not merely construe

---

[10] *See also Sprint Corp. v. FCC*, 315 F.3d 369, 374 (D.C. Cir. 2003) ("when an agency changes the rules of the game . . . more than a clarification has occurred. To conclude otherwise would intolerably blur the line between when the APA notice requirement is triggered and when it is not."); *Ceinture-Hampton Gen. Hosp. v Sullivan,* 980 F.2d 749, 759 (D.C. Cir. 1992) ("An agency may not, under the interpretative rule exception, 'constructively rewrite [a] regulation' or 'effect a totally different result.'") (*quoting National Family Planning and Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 236 (D.C. Cir. 1992)).

[11] HUD also contends that if Steinhorst is considered exempt, Steinhorst will be able to "needlessly charge higher rents than market rate," which "would harm both HUD and the public at large." Def.'s Mot. Summ. J. at 11. HUD offers no legal basis for the court to grant summary judgment in its favor for this reason, and its policy argument is misplaced. "[T]he impact of a rule has no bearing on whether it is legislative or interpretative." *James v. Hudson, Assoc., Inc. v. Glickman*, 229 F.3d 277, 281 (D.C. Cir. 2000) ("[E]ven if the USDA's [action] *did* impose a substantial burden on food processors, that burden would not convert the rule into a substantive one that triggers the APA's notice-and-comment rulemaking."). Just as "an otherwise-procedural rule does not become a substantive one, for notice-and-comment purposes, simply because it imposes a burden on regulated parties," *id.*, the court cannot say that the effect on a plaintiff's intended course of action justifies an agency's promulgation of a rule in contravention of notice-and-comment procedures.

it, makes § 401.100(b) a legislative rule.  *United Tech. Corp. v. EPA*, 821 F.2d 714, 719-20 (D.C.

Cir. 1987) ("If the rule is based on specific statutory provisions, and its validity stands or falls on

the correctness of the agency's interpretation of those provisions, it is an interpretative rule.  If,

however, the rule is based on an agency's power to exercise its judgment as to how best to

implement a general statutory mandate, the rule is likely a legislative one.").  Here, because

determining eligibility to an exception project under MAHRA at every contract renewal "adds

content to the governing legal norm" of "once an exception project, always an exception project,"

the first *American Mining Congress* factor is met.

**B.    Section 401.100(b) Binds HUD And Building Owners With The Force Of Law**

Recently, the D.C. Circuit held that "[t]he question of whether the guidance document is

a legislative rule that is subject to notice and comment — rather than a policy statement that is

not — turns on 'whether the agency action binds private parties or the agency itself with the

'force of law.'"  *Cement Kiln Recycling Coalition v. EPA*, 493 F.3d 207, 216 (D.C. Cir. 2007).

An agency pronouncement is considered binding "'if it either [1] appears on its face to be

binding, or [2] is applied by the agency in a way that indicates it is binding.'"  *Id.* (*quoting*

*General Elec., Co. v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002)).  The court finds that

§ 401.100(b) is binding and "has the force of law" both in appearance and as applied.  *Id.*

Section 401.100(b) requires building owners to qualify as an exemption project at

renewal and leaves no discretion to HUD in reviewing expiring contracts.  *See Air Transport*

*Assoc. of America v. FAA*, 291 F.3d 49, 56 (D.C. Cir. 2002) (*quoting Paralyzed Veterans*, 117

F.3d at 588) (explaining that if " the interpretation itself carries the force and effect of law,'" the

rule is legislative, and if "'it spells out a duty *fairly encompassed within the regulation* that the

interpretation purports to construe,'" indicates the rule is merely interpretative and not subject to

the notice-and-comment requirements) (alteration in original).  Moreover, HUD admits that it

promulgated 401.100 because "MAHRA does not specifically address when such eligibility is to

be determined," and that 401.100(b) "*establishes* [when] the *determination* of whether a project

satisfies section 512(2)'s definition of 'eligible multifamily housing project' is to be made."

Def.'s Opp'n to Pl.'s Mot. Summ. J. at 5 (emphasis added); *see also* Def.'s Mot. Summ. J. at 7.

("[T]he regulation is not only consistent with MAHRA, but in fact provides clarity to MAHRA

by *determining* when eligibility for the necessary mortgage restructuring occurs.") (emphasis

added).[12]

It is evident that § 401.100(b) "carries the force of effect of law" because it conclusively

establishes when eligibility is determined.  There is no indication that § 401.100 leaves any

discretion on the part of HUD to determine if a building owner qualifies as an exemption project

at HAP contract renewal.  *See McLouth Steel Prods. Corp. v. Thomas*, 838 F. 2d 1317, 1320

(D.C. Cir. 1988) (holding that the statement at issue was a legislative rule and not a policy

statement because "it substantially curtails [the agency's] discretion . . . and accordingly has

present binding effect.")*; Chamber of Commerce*, 636 F.2d at 467 n.4 (D.C. Cir. 1980) (finding

that regulation providing that "an employer's failure to pay employees for time during which they

are engaged in walkaround inspections is discriminatory under section 11(c), 29 C.F.R.

---

[12]  In addition, when informing Steinhorst's counsel that the new regulation required a
determination of contract eligibility at contract renewal, Deputy Assistant Secretary Toon stated
that "[t]hese new regulatory provisions are more definitive and carry more weight than the
provisions of the Section 8 Contract Renewal Guide . . ." Pl's Opp. to Def.'s Mot. for Summ. J.
Ex. 5 (Toon Ltr. to Coan, August 8, 2006)

§ 1977.21 (1979). . . . establishes a binding norm, and thus does not, as a policy statement must, leave the agency and its decision-makers free to exercise discretion") (internal quotations omitted).

## II.    HUD Published § 401.100(b) in the Code of Federal Regulations

Section 401.100(b) plainly meets the second *American Mining Congress* factor, as it is published in the Code of Federal Regulations.  The D.C. Circuit has observed that since *American Mining Congress*, it has not "taken publication in the Code of Federal Regulations, or its absence, as anything more than a snippet of evidence of agency intent."  *Health Ins. Ass'n of America, Inc. v. Shalala*, 23 F.3d 412, 423, 306 (D.C. Cir. 1994) (holding that in the case before it "the snippet is not enough.").  Nevertheless, publication in the Code of Federal Regulations. certainly remains a relevant consideration, and this court considers the fact that § 401.100 is published in the Code of Federal Regulations as but one factor indicating that it is legislative.

## III.    HUD Has Explicitly Invoked its General Legislative Authority

The regulation also satisfies the third *American Mining Congress* factor because the court finds HUD has explicitly invoked its general legislative authority.  Section § 401.100 falls under Part 401, MAHRA, Subpart A, "General Provisions; Eligibility."  The first section of Subpart A, § 401.1, titled "What is the purpose of part 401?", provides that:

> This part contains the regulations implementing the authority in the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA) for the Mark-to-Market Program. Section 511(b) of MAHRA details the purposes, and section 512(2) details the scope, of the Program.

It cannot be said that § 401.100(b) merely provides interpretative guidance or is a general policy statements.  In *Truckers United for Safety v. Federal Highway Admin.*, 139 F.3d 934, 939 (D.C.

17

Cir. 1998), the D.C. Circuit held that the Federal Highway Administration did not invoke its legislative authority in publishing the regulatory guidance where "[the] Administration explained [in the Federal Register] that this was 'interpretive guidance' meant to 'provide the motor carrier industry with a clearer understanding of the applicability of many of the requirements contained in the [Federal Motor Carrier Safety Regulations] in particular situations.'" (citing 62 Fed.Reg. at 16370). In contrast, the preamble to § 401.100(b) states that

> The rule now provides that once a project has been renewed under section 524 of MAHRA, it will be renewed at the owner's request under any renewal option for which the project is eligible, except that if it is eligible for a Restructuring Plan under Section 401.100, HUD or a [Participating Administrative Entity] will determine whether a renewal with or without a Restructuring Plan is necessary.

71 Fed. Reg. 2112-01. The definitive language of this preamble, indicating what "the rule now provides," is a clear invocation of HUD's legislative authority, not mere "interpretative guidance" for MAHRA.

## IV.    Remand Is The Appropriate Remedy

Having found that § 401.100(b) satisfies three *American Mining Congress* factors indicating that it is a legislative rule, the court agrees with Steinhorst that § 401.100(b) is invalid because HUD promulgated the regulation without following notice-and-comment procedures. The declaratory and injunctive relief Steinhorst seeks in its complaint is not the appropriate remedy for this violation of the APA, however. When a court finds that an agency has improperly promulgated a rule, the proper remedy is to vacate the rule and remand the matter to the agency. *Alameda County Medical Center v. Leavitt,* __ F. Supp. 2d __, 2008 WL 2200099, at *4 (D.D.C. May 23, 2008) (*citing MST Express v. Dep't of Transp.*, 108 F.3d 401, 402 (D.C.

Cir. 1997); *Shell Oil Co. v. EPA*, 950 F.2d 741, 752 (D.C. Cir. 1991)).[13]  Accordingly, this matter will be remanded to HUD for further proceedings consistent with this opinion.[14]

## CONCLUSION

For the foregoing reasons, Steinhorst's motion from summary judgment is granted in part and HUD's motion for summary judgment is denied.  An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.
United States District Judge

Dated: August 22, 2008

---

[13]  In light of the court's holding, the court does not reach the parties' remaining arguments*.  Public Citizen, Inc. v. Mineta,* 427 F. Supp. 2d 7, 12 (D.D.C. 2006) ("If the agency fails to provide this notice and opportunity to comment or the notice and comment period are inadequate, the 'regulation must fall on procedural grounds, and the substantive validity of the change accordingly need not be analyzed.'") *(quoting AFL-CIO v. Donovan*, 757 F.2d 330, 338 (D.C. Cir. 1985)).

[14]  Alternatively, Steinhorst moves for summary judgment on the ground that its HAP contracts may not be renewed under the restructuring provisions of MAHRA because Steinhorst Square is not an "Eligible Multifamily Housing Project."  Since § 401.100(b) pertains to restructuring, which is authorized by MAHRA § 514, and § 514 is only applicable to an "Eligible Multifamily Housing Project," and Steinhorst argues it is not a "Eligible Multifamily Housing Project" and therefore § 401.100 does not apply to Steinhorst.  Because the court has found § 401.100 to be invalid, it need not reach this argument.  However, were the court to reach this issue, it would deem it conceded because HUD does not respond to it in its opposition to Steinhorst's motion for summary judgment.  *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).